CURTIS BETTS *et al.*, Plaintiffs-Appellants, *v.* THE DEPARTMENT OF REVENUE *et al.*, Defendants-Appellees.

First District (4th Division)   No. 78-2046

Opinion filed October 18, 1979.

Ditkowsky & Contorer, of Chicago (Kenneth K. Ditkowsky, of counsel), for appellants.

William J. Scott, Attorney General, of Chicago (Edward M. Kay, of counsel), for appellees.

Mr. JUSTICE ROMITI delivered the opinion of the court:

This is an appeal from the dismissal of an amended complaint seeking injunctive relief. Plaintiffs, Curtis Betts and Curtis Pharmacy, Inc., filed a complaint on July 24, 1978, against the State of Illinois, Illinois Department of Revenue, Daniel Lenckos, acting director of that department, Thomas J. Gesiakowski of that department, Governor Thompson, and "unknown defendants." That complaint was dismissed on defendants' motion, but with leave to amend. On September 12, 1978, plaintiffs filed an amended complaint and petition for immediate injunction against the same defendants. Defendants again moved to strike the complaint and dismiss the action, and on October 13, 1978, the trial court denied plaintiffs' motion for a temporary injunction and dismissed the cause with prejudice. On appeal plaintiffs contend that their complaint, as amended, did state a cause of action for injunctive relief.

We affirm the order of the trial court.

In their amended complaint plaintiffs make allegations concerning the actions of three State agencies: the Illinois Department of Law Enforcement (DLE), the Illinois Department of Revenue (DR), and the Illinois Department of Registration and Education (DRE).

Concerning the DLE plaintiffs allege that an employee of Curtis Pharmacy, Stephen Davis, was induced to sell prescription pharmaceuticals to two agents of DLE, Joyce Jones and John Lofton. DLE agents, "at the direction of their supervisor and unknown individuals," presented false affidavits to the circuit court stating that defendant Betts had sold Dexedrine, a Class II substance, to agent Jones. Plaintiffs allege that defendants knew these representations were false because defendant Betts was outside Illinois at the time of the alleged sale, Dexedrine was not yet a Class II substance on July 1, 1975, when the sale took place, and the agents had not received any pharamaceuticals from Betts without a prescription. Plaintiffs further allege that agents of DLE (the Illinois Bureau of Investigation) swore falsely to obtain a criminal conviction against Betts. Plaintiffs then state that this conviction is being appealed and the individual agents are being sued in Federal court.

Plaintiffs also allege that DLE "without notice and hearing secretly" revoked the gun registration of Betts. Subsequently, in retaliation for the filing of plaintiffs' suit DLE, in conspiracy with the Chicago Police Department, caused a complaint to be filed on August 18, 1978, against Betts, falsely alleging that he possessed a firearm upon which the registration had been revoked. Plaintiffs state that DLE and the Chicago police knew the complainant was committing "wilful perjury" because he had no personal knowledge that Betts possessed the weapon, which "was mysteriously missing after the police raid of November 1, 1977." On the same day the complaint concerning the weapon was filed plaintiffs allege that "individuals in the employ of the Chicago Police Department" appeared at Betts' home at midnight and "without a warrant, in violation of the Fourth Amendment * * * searched [his] home, used crowbars to break into locked cabinets * * * then, after discovering cash belonging to Betts, the search ended, the money was taken from the premises, and Mrs. Betts * * * was arrested for a crime." Plaintiffs allege, upon their belief, that DLE agents "intend to commit further perjury to cover-up [these] actions." Plaintiffs further allege, upon their belief, that the money discovered in the search has not been properly inventoried and agents of DLE and the Chicago Police Department "have been unjustly enriched."

As to the Department of Revenue, plaintiffs allege that on September 15, 1976, DR agents entered Curtis Pharmacy and closed the business, seizing the personal property of the plaintiffs without warrant or notice. Subsequent to this raid plaintiffs allege that DR commenced administrative hearings which were unconstitutional and in violation of article I of the Illinois Constitution because they were "Star Chamber

Proceedings" where the "prosecutor and judge are one single individual." Plaintiffs then allege that prior to a determination of sales tax liability, DR "invaded the privacy of plaintiffs" by inquiring into their personal bank accounts at Chicago City Bank & Trust Company. DR then "wrongfully and without authority of statute" served a lien in the sum of $15,423.28 on that bank. According to plaintiffs this was filed prior to the completion of the hearing to determine if money was owed. Plaintiffs allege that the lien was served to prevent them from paying for the legal fees and costs to review DR's action. Plaintiffs next allege that DR filed 13 criminal complaints against Betts "in retaliation" for filing this lawsuit. (These complaints were made part of the record as part of plaintiffs' original petition for an injunction. They relate to plaintiff Betts' alleged failure to file monthly Combined Retailers' Occupation Tax and Service Occupation Tax Returns for the months between January 1977 and January 1978 inclusive.) Finally, plaintiffs allege that DR "broadcast, in public, threats to jail Betts and referred to him as a 'crook'."

Plaintiffs allege that the Illinois Department of Registration and Education on or about November 11, 1977, "in conspiracy with other persons who filed criminal complaints in the name of the People of the State of Illinois" caused two raids, two days apart, to occur "without warrant, seizing customers, merchandise, pharmaceuticals, records, firearms * * * cash and monies." DRE also filed perjured complaints against customers and employees of Curtis Pharmacy. DRE, according to plaintiffs, conducted pharmacy inspections to examine records seized in these raids "in conspiracy with other State Agencies and persons acting on behalf of the State of Illinois." As part of this same conspiracy plaintiffs allege the DRE libeled and slandered them by making false assertions to the media, creating the impression that plaintiffs were "dope pushers and/or persons of ill repute"; invaded their privacy with "unauthorized investigations"; revoked their license without notice and hearing, and when ordered by the court to conduct a hearing conducted only a "sham hearing" in violation of due process; attempted to induce David Johnson and Alfred Evans to commit perjury and testify "that plaintiff was committing various and sundry criminal acts"; and forced plaintiffs to pay almost double the statutory charge for a record of proceedings.

In their complaint plaintiffs support their need for equitable relief by alleging essentially the following: Betts has been convicted and sentenced to jail upon perjured evidence; Betts' family has been harassed by telephone calls and warrantless searches; Betts' money and property have been taken from him in the amount of over $100,000; his reputation has been tarnished by false media charges; plaintiffs' bank accounts have been liened for arbitrary sums prior to completion of hearings; Betts'

employees and customers were arrested on false and perjured charges.. Plaintiffs allege that the threat of future injury continues as indicated by the 13 criminal complaints filed by DR and the raid by agents of DLE and the Chicago Police Department.

Plaintiffs state that their remedy at law is not adequate. They contend in the complaint that unless defendants are enjoined "they will continue filing numerous proceedings against [plaintiffs], conduct more and different illegal searches and seizures, and further deny the [plaintiffs] the equal protection of the law."

Plaintiffs also allege, upon their belief, that "the actions of the Defendants are motivated by [Betts] being a member of a 'minority race' which is a violation of the Illinois Constitution of 1970." Plaintiffs conclude their amended complaint with a prayer for the following relief:

"1. That this Court grant a People's Writ of Injunction, enjoining the administration of GOVERNOR JAMES R. THOMPSON and all persons associated with him, from directly or indirectly, taking any action which affects the property rights of CURTIS BETTS and/or CURTIS PHARMACY, INC.

2. That a Peoples Writ of Injunction enter, requiring the STATE OF ILLINOIS and its subsidiaries, including the Office of the Attorney General, Department of Registration and Education, Department of Revenue, etc. to undo, vitiate, abrogate and render for nought, any actions which directly or indirectly affect the liberty or property rights of CURTIS BETTS, commencing with the unlawful arrest of CURTIS BETTS and continuing through all actions taken to date.

3. That the STATE OF ILLINOIS, Department of Revenue and the individual Defendants in the administration of GOVERNOR THOMPSON be required to account and to render CURTIS BETTS and CURTIS PHARMACY, INC., equal protection of the law, paying him such sums as he or it was damaged by the unlawful actions commenced against them.

4. That a Peoples Writ of Injunction enter preventing any future actions by the Department of Revenue, Department of Registration and Education, Office of the Attorney General or any other agency of the State of Illinois or branch of government controlled by the Thompson Administration, from directly or indirectly prosecuting CURTIS BETTS, without prior Petition to this Court and limiting prosecution to one proceeding and a single forum.

5. That CURTIS BETTS be awarded his attorney's fees and costs for bringing this suit and this matter be brought for an immediate

hearing and a temporary and permanent Injunction be entered, protecting the rights, privileges and immunities of CURTIS BETTS as required by the Illinois Constitution."

I.

In their motion to dismiss and on appeal defendants have asserted that this suit is barred by the doctrine of sovereign immunity. Although the 1970 Illinois Constitution abolished sovereign immunity it also permitted the legislature to reenact it:

"Except as the General Assembly may provide by law, sovereign immunity in this State is abolished." (Ill. Const. 1970, art. XIII, §4.)

This was accomplished with the passage of "An Act in relation to immunity for the State of Illinois" (Ill. Rev. Stat. 1973, ch. 127, par. 801), effective January 1, 1972, the same day the constitutional provision became effective. That act provides:

"Except as provided in 'AN ACT to create the Court of Claims, to prescribe its powers and duties, and to repeal AN ACT herein named', filed July 17, 1945, as amended, the State of Illinois shall not be made a defendant or party in any court."

██ The determination whether an action is against the State of Illinois and thus proscribed by law depends not just on identification of the formal parties to the record, but also on the issues involved and the relief sought. (*City of Springfield v. Allphin* (1978), 74 Ill. 2d 117, 384 N.E.2d 310; *Moline Tool Co. v. Department of Revenue* (1951), 410 Ill. 35, 101 N.E.2d 71.) Thus a suit brought against a State agency or its officers which concerns matters in which the defendants represent the State in their actions and in liability is in effect a suit against the State even though the State is not a formal party to the record. (*Talandis Construction Corp. v. Illinois Building Authority* (1978), 60 Ill. App. 3d 715, 377 N.E.2d 237, see *Noorman v. Department of Public Works and Buildings* (1937), 366 Ill. 216, 8 N.E.2d 637, *appeal dismissed* (1937), 302 U.S. 637, 82 L. Ed. 496, 58 S. Ct. 30.) But when a State officer performs acts which are illegal or beyond his authority or purports to act under the authority of an unconstitutional statute, a suit brought against that officer is not considered to be against the State. *Sass v. Kramer* (1978), 72 Ill. 2d 485, 381 N.E.2d 975.

██ In this cause the formal defendants include the State of Illinois, sued "in its corporate capacity," the Governor, as well as the Illinois Department of Revenue and two of its officers. In the body of the complaint plaintiffs appear to also include as defendants the Department of Law Enforcement and the Department of Registration and Education.

There is no claim presented that any of these defendants acted pursuant to an unconstitutional statute. Nor is there any specific factual allegation which, if proven, would establish that any of the named State officials exceeded their authority or acted illegally. Pleadings which state conclusions and characterize acts rather than stating facts are insufficient. (*Kurek v. Kavanagh, Scully, Sudow, White & Frederick* (1977), 50 Ill. App. 3d 1033, 365 N.E.2d 1191.) Thus it does not suffice for plaintiffs to allege, without specifics as to names and manner, that DLE agents acted "at the direction of their supervisor" in presenting false affidavits or that the DLE acted in conspiracy with the Chicago Police Department to cause a false complaint to be filed against plaintiff Betts. Nor does the characterization of a DR hearing as a "Star Chamber Proceeding" constitute a factual basis for alleging specific illegal acts by a State officer.

■ However, in this cause the clearest evidence of the target involved is found in the relief sought. Plaintiff Betts seeks to enjoin the State and its agencies from prosecuting him or taking any action which would affect his liberty or property rights, at least without leave of court. Obviously, such relief is not directed towards curbing unconstitutional or illegal acts by the defendants; if granted, this injunctive relief would curtail even entirely legal and proper prosecutions or investigations which might be contemplated by these agencies and officials. Thus, the plaintiffs' amended complaint in form and substance seeks equitable relief against the State of Illinois, its agencies, and officers in their official and authorized functions. As such it is barred by sovereign immunity and was properly dismissed.

## II.

■■ ■ As an independent basis for affirming the dismissal of this action we note that plaintiffs' amended complaint fails to allege facts establishing the need for injunctive relief. This extraordinary remedy will be granted only when the right to it is clearly established. (*Parsons v. Walker* (1975), 28 Ill. App. 3d 517, 328 N.E.2d 920.) Thus, in seeking injunctive relief a plaintiff must set forth in his complaint certain essential facts showing his right to such relief, including the lack of an adequate remedy at law. (*Larkin v. Howlett* (1974), 19 Ill. App. 3d 343, 311 N.E.2d 367.) And, as we have noted, this must be a factual allegation, not mere opinion, conclusion or belief. (*McErlean v. Harvey Area Community Organization* (1972), 9 Ill. App. 3d 527, 292 N.E.2d 479.) Yet plaintiffs merely allege that they have no adequate remedy at law because unless defendants are enjoined they will continue filing numerous proceedings against plaintiffs and will engage in additional illegal searches and seizures. This is a belief not founded on any factual allegation and as such is insufficient to establish the lack of a legal remedy. Nor can the fact

of the prior prosecutions and proceedings cited by plaintiffs suffice as a factual basis for their claim. It is not sufficient to allege the existence or threat of multiple actions, it must be shown that as the result of these actions a remedy at law would be inadequate. (*People ex rel. Shepardson v. Universal Chiropractors' Association* (1922), 302 Ill. 228, 134 N.E. 4.)[1] Plaintiffs contend that these disparate actions are all part of a conspiracy by the State of Illinois and its agencies directed against them. But again there is no factual basis alleged to support such a claim, only that conclusion. All of plaintiffs' allegations appear to stem from incidents arising out of the following proceedings:

> 1. A State criminal prosecution commenced in 1975 arising from Betts' alleged sale of pharmaceuticals without prescriptions. Plaintiff Betts was convicted on one count and his appeal is presently before another division of this court;
> 2. Administrative proceedings instituted by the Department of Revenue in 1976 involving Betts' alleged sales tax liability;
> 3. Criminal complaints instituted by the Department of Revenue charging Betts in 13 counts with failure to file certain required monthly tax returns;
> 4. Administrative proceedings by the Department of Registration and Education, commenced in 1976, pertaining to the revocation of Betts' license;
> 5. A 1978 criminal complaint filed against Betts for possession of a firearm for which the registration had been revoked.

Plaintiffs have failed to specify in what manner the independent legal methods of reviewing these actions are inadequate. As we have noted plaintiff Betts has pending an appeal for the criminal conviction. He also has available to him the review procedures of the Administrative Review Act insofar as the administrative proceedings are concerned (Ill. Rev. Stat. 1977, ch. 110, par. 264 *et seq.*). Plaintiff Betts has also stated that he is pursuing a Federal action against agents involved in the 1975 criminal action. All the actions complained of arose out of distinct allegations against plaintiff Betts over a period of at least four years. He has failed to allege facts which could establish common issues involved in these separate actions so as to indicate the need for a single equitable remedy. (See *Hershey Mfg. Co. v. Adamowski* (1961), 22 Ill. 2d 36, 174 N.E.2d 200; *Adams v. Oberndorf* (1905), 121 Ill. App. 497.) Accordingly, because plaintiffs' amended complaint fails to allege facts establishing the

---

[1] In *Shepardson* the court also found no public nuisance arising from the practice of chiropractic without a license, so that no injunction would lie to halt such a practice. This holding of *Shepardson* was overruled in *Burden v. Hoover* (1956), 9 Ill. 2d 114, 137 N.E.2d 59.

inadequacy of the legal remedies available to them, the trial court did not err in dismissing it.

For the reasons stated, the judgment of the trial court is affirmed.

Affirmed.

JIGANTI, P. J., and LINN, J., concur.