THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. PATRICK J. GORMAN CONSULTANTS, INC., et al., Defendants-Appellants.—(The State of Illinois et al., Counterdefendants-Appellees.)

First District (3rd Division)    Nos. 81—1099, 81—1322 cons.

Opinion filed December 30, 1982.

Shelly Waxman & Associates, of Chicago, for appellants.

Tyrone C. Fahner, Attorney General, of Chicago (Leslie J. Rosen, Assistant Attorney General, of counsel), for the People.

JUSTICE McNAMARA delivered the opinion of the court:

In this consolidated appeal, defendants Patrick J. Gorman, Martin D. Gorman and Patrick J. Gorman Consultants, Inc., appeal from a portion of a trial court order which dismissed their counterclaim against the State of Illinois, the Attorney General and his three named assistants.

The Attorney General originally filed charges in 1976 for violations of "An Act to regulate solicitation and collection of funds for charitable purposes ***" (Ill. Rev. Stat. 1977, ch. 23, par. 5101 *et seq.*). Since then, this court has issued three decisions in the matter: *People ex rel. Scott v. Police Hall of Fame, Inc.* (1978), 60 Ill. App. 3d 331, 376 N.E.2d 665 (liability and injunction prohibiting further solicitation affirmed); *People ex rel. Scott v. Police Hall of Fame, Inc.* (1979), 69 Ill. App. 3d 501, 387 N.E.2d 856 (supplemental proceedings reversed and contempt citations quashed); and *People ex rel. Scott v. Gorman* (1981), 96 Ill. App. 3d 289, 421 N.E.2d 228 (award of damages vacated and remanded).

In October 1980, the Gormans filed the present counterclaim. Count II alleged that plaintiffs violated the Federal civil rights act and committed State common law torts. The Gormans sought compensatory and punitive damages in excess of $3,500,000. In its order of dismissal entered on March 31, 1981, the trial court found that the State was immune based on State sovereign immunity and that the prosecutors were "absolutely immune" for any of the alleged acts.

We first address the Gormans' contention that the Attorney General waived State sovereign immunity by filing suit against the Gormans.

Section 4 of article XIII of the 1970 Constitution abolished the doctrine of sovereign immunity "except as the General Assembly may provide by law." The General Assembly retained sovereign immunity by enacting legislation which states: "Except as provided in 'An Act to create the Court of Claims ***' the State of Illinois shall not be made a defendant or party in any court." (Ill. Rev. Stat. 1979, ch. 127, par. 801.) Section 8 of the Court of Claims Act provides in pertinent part:

"The court [of Claims] shall have exclusive jurisdiction to hear and determine the following matters:

* * *

(d) All claims against the State for damages in cases sounding in tort, if a like cause of action would lie against a private

person or corporation." Ill. Rev. Stat. 1979, ch. 37, par. 439.8.

■ Thus, only the General Assembly, and not the Attorney General, can determine when claims against the State will be allowed. (*Seifert v. Standard Paving Co.* (1976), 64 Ill. 2d 109, 355 N.E.2d 537; see also *Watson v. St. Annes Hospital* (1979), 68 Ill. App. 3d 1048, 386 N.E.2d 885.) And the legislature has determined that sovereign immunity is waived only when suits against the State are brought pursuant to the Court of Claims Act.

■ To support their claim that the Attorney General has the authority to waive State sovereign immunity, the Gormans rely upon the holding in *Marrapese v. State of Rhode Island* (D. R.I. 1980), 500 F. Supp. 1207. There, however, the court specifically distinguished Rhode Island law, which contains a broad waiver of immunity, from Illinois law in which the waiver of immunity is carefully controlled by the Court of Claims Act. Accordingly, we find that the trial court properly dismissed the counterclaim against the State because the trial court lacked jurisdiction to determine the validity of the claims against the State.

The Gormans also argue that the trial court erred in finding the prosecutors absolutely immune from liability for any of the acts alleged. Because the counterclaim alleged violations of both Federal and State law, we address both State and Federal grants of immunity to State prosecutors.

In Illinois, pursuant to the doctrine of public official immunity, State officials and employees are fully protected from liability for acts falling within their official discretion. (*Madden v. Kuehn* (1978), 56 Ill. App. 3d 997, 372 N.E.2d 1131; *Mora v. State* (1977), 68 Ill. 2d 223, 369 N.E.2d 868.) Discretionary acts are those which are unique to the particular public office and not merely ministerial in nature. *Madden v. Kuehn; People ex rel. Scott v. Briceland* (1976), 65 Ill. 2d 485, 359 N.E.2d 149.

■ In this case, the Gormans' claims all relate to actions alleged to have been taken in the course of the prosecutions for violations of the Act. Section 9(a) of the Act specifically authorizes plaintiffs to prosecute violators and states in pertinent part:

"(a) An action for violation of this Act may be prosecuted by the Attorney General in the name of the people of the State, and in any such action, the Attorney General shall exercise all the powers and perform all duties which the State's Attorney would otherwise be authorized to exercise or to perform therein." (Ill. Rev. Stat. 1977, ch. 23, par. 5109.)

Because all of the actions are alleged to have been part of the prosecu-

tion which is statutorily mandated by the Act, these actions are discretionary in nature. Therefore the counterclaim against the prosecutors was barred by the public official immunity doctrine and thus, properly dismissed by the trial court.

The Gormans contend, however, that along with State common law torts, Federal violations of the Act are involved. They argue that, pursuant to the holding in *Imbler v. Pachtman* (1976), 424 U.S. 409, 47 L. Ed. 2d 128, 96 S. Ct. 984, plaintiffs are not entitled to absolute immunity and that therefore the State law public immunity doctrine is of no consequence in this case. In *Imbler*, the Supreme Court held that a prosecutor has absolute immunity in the initiation of a prosecution and in the presentation of the State's case. The court left open the question whether prosecutors are entitled to absolute immunity for activities conducted by them in their administrative or investigative roles. We need not, however, reach that issue here. With the possible exception of one allegation that plaintiffs provided false information to newspapers (see *Butz v. Economou* (1978), 438 U.S. 478, 57 L. Ed. 2d 895, 98 S. Ct. 2894; *Hampton v. Hanrahan* (7th Cir. 1979), 600 F.2d 600), the allegations in the counterclaim all charge various ways in which plaintiffs improperly prosecuted and continue to prosecute the Gormans during the initiation of proceedings against them and in the presentation of the case. (*Hampton v. Hanrahan; Daniels v. Kieser* (7th Cir. 1978), 586 F.2d 64; *Heidelberg v. Hammer* (7th Cir. 1978), 577 F.2d 429.) Because these activities relate to the quasi-judicial functions of the prosecutors, they were properly afforded absolute immunity for such acts. *Imbler v. Pachtman.*

■ The sole claim that could be characterized as an activity outside plaintiffs' prosecutorial roles is the providing of false information to newspapers. This claim, as well as all the other charges against plaintiffs, fails to contain any specific factual allegations which if proved would establish that any of the prosecutors exceeded their authority. Pleadings which state conclusions and characterize acts rather than state facts are insufficient. (*Betts v. Department of Revenue* (1979), 78 Ill. App. 3d 102, 396 N.E.2d 1150.) The Gormans therefore failed to state a cause of action for violation of the Federal civil rights act or the commission of a State common law tort.

For the reasons stated, the portion of the order of the circuit court of Cook County dismissing the Gormans' counterclaim against the State of Illinois, the Attorney General and the three named assistant Attorney Generals is affirmed.

Order affirmed.

McGILLICUDDY and RIZZI, JJ., concur.