LOCAL 3236 OF THE ILLINOIS FEDERATION OF STATE OFFICE EDU-
CATORS, IFT-AFT, AFL-CIO, *et al.*, Plaintiffs-Appellants, *v.* THE ILLI-
NOIS STATE BOARD OF EDUCATION *et al.*, Defendants-Appellees.

First District (5th Division)   No. 83—1612

Opinion filed January 13, 1984.

Stephen A. Yokich, of Cornfield and Feldman, of Chicago, for appellants.

Neil F. Hartigan, Attorney General, of Chicago (Susan C. Weidel, Assistant Attorney General, of counsel), for appellees.

JUSTICE SULLIVAN delivered the opinion of the court:

Plaintiffs appeal from an order of the trial court dismissing for lack of subject matter jurisdiction their action to compel defendants to arbitrate certain salary grievances. The sole issue before us is the propriety of that dismissal.

This dispute arose from a collective bargaining agreement (the agreement) entered into on July 1, 1981, between Local 3236 of the Illinois Federation of State Office Educators, IFT-AFT, AFL-CIO (the Federation) and the Illinois State Board of Education (the Board), which provided for an 8% increase in annual salary effective July 1, 1982. According to plaintiffs' complaint, the Board notified the Federation in January of 1982 that because of expected decreases in governmental funding for education, it would be necessary to lay off several Federation members. In order to avert the impending layoffs, the Federation and the Board entered into a supplemental agreement on June 24, 1982, which provided in relevant part:

"A. The Federation agrees to postpone the scheduled 8% increase due July 1, 1982.

B. Management agrees to defer all current layoff notices for bargaining unit members.

C. Once the final appropriations amount is law and the first priority of eliminating layoffs of bargaining unit personnel is accomplished, additional available and useable personal service funds will be committed to salary increases to a maximum of 8%.

D. Management further agrees that once the final appropri-

ation amount is law and layoffs have been eliminated, one (1) additional negotiation session will be scheduled (no more than eight hours of bargaining during a twenty-four hour period) for the sole purpose of reviewing and identifying useable and available resources in order to implement item C."

Sometime thereafter, the personal services appropriation became final, and the Board implemented a 2.2% salary increase. Plaintiffs, asserting that the appropriation contained sufficient funds to implement a greater increase, filed the following grievance:

"In accordance with Article 20, Grievances, of the AGREEMENT BETWEEN THE ILLINOIS STATE BOARD OF EDUCATION AND THE ILLINOIS FEDERATION OF STATE OFFICE EDUCATORS, I am filing the following grievance on behalf of myself and all bargaining unit members:

That the Employer (management) has failed to comply with Section I, C and I, D of the contract as it was amended as well as Article 27, Salary, and Article 28, Salary Schedule, by failing to commit available and useable resources to increase salaries to a maximum of 8 percent in addition to implementing step increases when and where appropriate.

Whereas, the General Assembly has appropriated adequate funds and the Governor has signed into law these appropriations enabling management to comply fully with Section I, C of the contract as amended, I am requesting that all appropriated step increases and across the board raises of 8 percent be implemented immediately retroactive to July 1, 1982."

Plaintiffs allege in their complaint that they followed the five-step grievance procedure set forth in the agreement, and that their grievance was denied at each step. They then demanded that the matter be submitted to arbitration pursuant to article 20 of the agreement, which provides in relevant part:

"Section 1. A grievance shall mean a dispute or difference of opinion raised by an employee against the Employer involving the meaning, interpretation, or application of the specific provisions of this Agreement.

* * *

Section 4. If the grievance is not settled in accordance with [5-step procedure], the Federation may refer the grievance to arbitration within ten (10) weekdays after receipt of the Superintendent's answer in Step 5.

* * *

Section 5. The arbitrator shall have no right to amend, modify,

nullify, ignore, add to, or subtract from the provisions of this Agreement. \*\*\* The award shall be based solely upon his/her interpretation of the meaning or application of the specific terms of this Agreement to the facts of the grievance submitted. \*\*\* The award shall be binding on the parties."

Defendants refused to submit the matter to arbitration, and plaintiffs brought the instant action on December 27, 1982, seeking a declaration of the parties' rights and an order directing defendants to comply with the demand for arbitration.

Defendants filed a motion to dismiss, alleging that the Board is an agency of the State of Illinois; that the individual defendants are officers of the Board, sued in their official capacities; that the complaint presented a claim founded upon a contract; and that the matter was therefore within the exclusive jurisdiction of the Illinois Court of Claims. The complaint was dismissed on May 14, 1983, without prejudice to plaintiffs' right to file a claim with the Illinois Court of Claims. Plaintiffs' motion to reconsider was denied, and this appeal followed.

OPINION

Plaintiffs acknowledge that the legislature has provided for limited sovereign immunity in section 1 of "An Act in relation to immunity for the State of Illinois" (the immunity statute), which states that "[e]xcept as provided in 'An Act to create the Court of Claims \*\*\*'" the State of Illinois shall not be made a defendant or party in any court." (Ill. Rev. Stat. 1981, ch. 127, par. 801.) It is their position, however, that the immunity statute is inapplicable here because (a) this action is not one against the State, (b) immunity has been waived, and (c) a suit to compel arbitration is not within the exclusive jurisdiction of the Illinois Court of Claims.

With regard to plaintiffs' first argument, the question whether the State is a party for purposes of the immunity statute is determined by the issues involved and the relief sought. (*Sass v. Kramer* (1978), 72 Ill. 2d 485, 381 N.E.2d 975.) Thus, it has been stated that, even where the State is not a named party, an action "may be deemed a suit against the State if it would serve to control the action of the State or subject the State to liability" (*Board of Education v. Cronin* (1979), 69 Ill. App. 3d 472, 474, 388 N.E.2d 72, 74), but an action to enjoin an officer of the State from acting in excess of his delegated authority (see, *e.g., Bio-Medical Laboratories, Inc. v. Trainor* (1977), 68 Ill. 2d 540, 370 N.E.2d 223) or in abuse of his discretion (see, *e.g., Houseknecht v. Zagel* (1983), 112 Ill. App. 3d 284, 445 N.E.2d 402) or an action to compel him to perform a clear statu-

tory duty (see, *e.g., Board of Education v. Cronin* ) is a suit against the officer, not against the State, and therefore are exceptions to the immunity statute.

In the case before us, plaintiffs maintain that the action is not against the State, but against the named defendants to compel them to perform a legal duty. They posit that defendants' exercise of their authority to enter into a collective bargaining agreement created a legal duty on their part to comply with the arbitration clause contained therein, and that this duty is enforceable in the circuit court as provided by section 2 of the Uniform Arbitration Act. (Ill. Rev. Stat. 1981, ch. 10, par. 102.) Thus, plaintiffs seek to bring this action within the above-noted exceptions by placing the label "legal duty" on what is clearly a contractual obligation arising from the agreement, asserting that there is no difference between a contractual duty and the statutory duty enforced in *Board of Education v. Cronin.*

■■ ■ Initially, we note that dismissal as to the defendant Board was proper because it is a department of the State, and it has been held that where the named defendant is such a department the suit is one against the State and may not be maintained in any court except as provided in the Court of Claims Act. (*Gordon v. Department of Transportation* (1982), 109 Ill. App. 3d 1071, 441 N.E.2d 904.) However, because an action to compel performance of a legal duty may be brought against the department officers rather than against the department as an entity (see *Gordon v. Department of Transportation*), we have considered plaintiffs' arguments with regard to the three individual defendants named in their official capacities as officers of the Board to determine whether, as plaintiffs assert, an action to require those officers to comply with a contractual obligation is the equivalent of an action to compel performance of a statutory duty. Plaintiffs have not cited, nor has our own research discovered, any case so holding, and we do not agree with plaintiffs that an action to enforce the terms of a contract is within the exception to the immunity statute allowing suits against State officers to compel compliance with a statutorily mandated duty. If we were to accept plaintiffs' position, we would render meaningless section 8(b) of the Court of Claims Act, which provides that the Illinois Court of Claims "shall have exclusive jurisdiction to hear and determine *** all claims against the state founded upon any contract entered into with the State of Illinois." (Ill. Rev. Stat. 1981, ch. 37, par. 439.8(b).) Moreover, under plaintiffs' theory, every time a State official signed a contract, all of its provisions would become enforceable in the circuit court under the guise of "compelling" the official to "perform a legal duty." This result would

be untenable because the State, which can act only through its agents, would then have no immunity against any breach of contract claim.

Plaintiffs posit that their action is an exception for the additional reason that it does not involve a claim for money. However, the Court of Claims Act is not limited to money claims—it encompasses all claims against the State founded upon a contract, and thus the the seminal question here is not what types of claims are within the Court of Claims Act, but whether the instant action is against the State rather than against the individual officers. These officers entered into a contract on behalf of the State, and it is our view that plaintiffs' action seeks to control the actions of the State in performing that contract by controlling the actions of these officers. Therefore, it is our view that the present action is a suit against the State for purposes of the immunity statute. See *Board of Education v. Cronin* (1979), 69 Ill. App. 3d 472, 474, 388 N.E.2d 72, 74-75.

Plaintiffs also argue that by entering into this contract, the State has waived the immunity statute and is therefore subject to the Uniform Arbitration Act. A similar argument was rejected recently in *S. J. Groves & Sons Co. v. Illinois* (1982), 93 Ill. 2d 397, 444 N.E.2d 131, where the plaintiff sought to bring a breach of contract action against the State in the circuit court, arguing that by authorizing the State to enter into contracts, the General Assembly consented to be sued thereon. The supreme court held that the action was properly dismissed, noting:

> "Consent to be sued cannot be implied when there is an express statutory provision to the contrary. Whether the State is liable on a particular contract is a different question from whether the State is immune from being sued by an aggrieved party on that contract." (93 Ill. 2d 397, 404, 444 N.E.2d 131, 134.)

Thus, the authorization to contract does not, as plaintiffs suggest, imply a consent to be sued in the circuit court.

Furthermore, it appears that neither the Board nor the individual officers named herein had the authority to waive the State's immunity. In *J.L. Simmons Co. v. Capital Development Board* (1981), 98 Ill. App. 3d 445, 424 N.E.2d 821, the plaintiff demanded arbitration under a contract providing therefor, but the defendant, an agency of the State, refused to participate. The arbitrator found for the plaintiff, who then brought an action in the circuit court to enforce the award, arguing that by virtue of its contract the defendant had waived the right to have the action decided by the Illinois Court of Claims. This court held:

"The State can consent to suit, but only through the affirmative action of the General Assembly. [Citations.] An officer or agency of the State does not have the authority to waive laws that are for the benefit of this State. [Citation.] Thus, this cause must be brought in the Court of Claims despite the Board's apparent agreement to subject any contract disputes to arbitration." (98 Ill. App. 3d 445, 447, 424 N.E.2d 821, 822-23.)

Similar reasoning was used recently in *People v. Patrick J. Gorman Consultants, Inc.* (1982), 111 Ill. App. 3d 729, 444 N.E.2d 776. There, the Attorney General filed charges against the defendant for violation of a statute, and the defendant counterclaimed against the State for damages, alleging that the action was tortiously brought and in violation of the Federal Civil Rights Act. The trial court dismissed the counterclaim, finding that the State was immune from suit. On appeal, the defendant argued that the Attorney General waived the State's sovereign immunity by filing suit against it and, in rejecting that argument, we held that "only the General Assembly, and not the Attorney General, can determine when claims against the State will be allowed. [Citations.] And the legislature has determined that sovereign immunity is waived only when suits against the State are brought pursuant to the Court of Claims Act." (111 Ill. App. 3d 729, 731, 444 N.E.2d 776, 778.) Based on the foregoing, it is our view that defendants had no authority to waive the State's sovereign immunity by entering into an agreement providing for arbitration, and we therefore reject plaintiff's argument to the contrary.

Plaintiffs further contend that this action is not within the exclusive jurisdiction of the Illinois Court of Claims, maintaining that there is no authority for the proposition that the Illinois Court of Claims has the power to grant the relief requested, and that an action to compel arbitration must be treated differently from other contract actions because of the strong public policy favoring the resolution of disputes through arbitration.

■ We have found no support for plaintiffs' assertion that the Illinois Court of Claims may decide only monetary claims based on contracts and, as noted above, there is no such limitation expressed in the Court of Claims Act. Furthermore, we fail to see how the policy favoring arbitration is better served by an order of the circuit court compelling arbitration than by an order of the Illinois Court of Claims granting the same relief. However, we need not decide here what precise powers are vested in the Illinois Court of Claims regarding contracts, for underlying plaintiffs' arguments is the erroneous assumption that jurisdiction in this case may be established by default; *i.e.*, if

the Illinois Court of Claims does not have exclusive jurisdiction, then the circuit court must have jurisdiction. The Illinois Constitution of 1970 empowered the General Assembly to determine the parameters of the sovereign immunity doctrine within this State. (Ill. Const. 1970, art. XIII, sec. 4.) It has exercised that authority through enactment of the immunity statute and specifically provided therein that the State may not be made a defendant or party in any court *except* as provided in the Court of Claims Act. (Ill. Rev. Stat. 1981, ch. 127, par. 801.) Thus, we must look to the Court of Claims Act to determine whether the General Assembly has made any provision for the maintenance of this action in the circuit court (*Sass v. Kramer* (1978), 72 Ill. 2d 485, 381 N.E.2d 975), for it must be brought pursuant thereto or not at all. We have examined the provisions of that Act and found nothing therein which grants jurisdiction of this matter to the circuit court. Therefore, we believe that plaintiffs' only remedy is an action before the Illinois Court of Claims pursuant to its jurisdiction over contractual claims.

For the foregoing reasons, the order of the trial court is affirmed.

Affirmed.

LORENZ and WILSON, JJ., concur.