PRESIDENT LINCOLN HOTEL VENTURE *et al.*, Plaintiffs-Appellants, v. BANK ONE, SPRINGFIELD, as Trustee, *et al.*, Defendants-Appellees.— PRESIDENT LINCOLN HOTEL VENTURE *et al.*, Plaintiffs-Appellees, v. BANK ONE, SPRINGFIELD, as Trustee, *et al.*, Defendants-Appellants.

First District (1st Division)   Nos. 1—92—2380, 1—92—2668 cons.

Opinion filed October 3, 1994.—Rehearing denied May 5, 1995.

1050

Winston & Strawn (Dan K. Webb, Paul P. Biebel, Jr., Warren Von C. Baker, and Jack J. Crowe, of counsel), and Samuel V.P. Banks, both of Chicago, for President Lincoln Hotel Venture and Collinsville Hotel Venture.

Hart & Southworth (Mike Southworth, of counsel), and Samuel J. Witsman, of Bank One, both of Springfield, for Bank One.

Roland W. Burris, Attorney General, of Chicago (Rosalyn B. Kaplan, Solicitor General, and Deborah L. Ahlstrand, Assistant Attorney General, of counsel), for Patrick Quinn.

JUSTICE BUCKLEY delivered the opinion of the court:

Plaintiffs, the President Lincoln Hotel Venture (Lincoln) and the Collinsville Hotel Venture (Collinsville), brought an action seeking a declaratory judgment, injunctive relief and specific performance against defendants, Bank One, Springfield (Bank One) and the Treasurer of the State of Illinois, Patrick Quinn (Treasurer Quinn), in relation to the provisions of a loan restructuring agreement which arose out of the Illinois Insured Mortgage Pilot Program (Mortgage Program). The trial judge dismissed plaintiffs' action on the grounds that it was barred by the doctrine of sovereign immunity. The trial judge also disqualified the law firm of Winston & Strawn from representing plaintiffs because the firm previously had represented and counseled American National Bank & Trust Co. (American National), defendant Bank One's predecessor as trustee of the Mortgage Program. On appeal, plaintiffs contend that: (1) sovereign

immunity does not apply where Treasurer Quinn has acted unlawfully and in excess of his statutory authority; (2) the circuit court, and not the Court of Claims, has exclusive jurisdiction over a case that seeks only equitable relief and not money damages against a State official who acted outside of his lawful authority; and (3) the court's decision to disqualify Winston & Strawn from representing plaintiffs in this action was erroneous because defendants are not former clients of the firm and the firm's former representation of American National was not "substantially similar" to the subject matter of this litigation.

The State of Illinois established the Mortgage Program in 1982 when, through its Treasurer, the State entered into a purchase agreement, trust indenture and servicing agreement (Program Trust Agreement) with American National, in American National's individual capacity and as trustee. Under the Mortgage Program, State investment monies would be loaned to certain commercial developers through American National. The State owns 100% of the trust estate and, through the State Treasurer, has full power and authority to direct the trustee's activities.

In the early 1980's, plaintiffs borrowed money from the State through the Mortgage Program in order to build several hotels. Pursuant to the Program Trust Agreement, American National, as trustee, administered the loans on behalf of the parties. American National retained Winston & Strawn to advise it regarding the nature and scope of its responsibilities and obligations, as administrator, in servicing these loans.

Subsequently, the State agreed to increase the principal and restructure plaintiffs' loans. In 1990, when plaintiffs were unable to meet their loan payments, then State Treasurer Jerome Cosentino directed American National to enter into second restructuring agreements with plaintiffs. The second restructuring agreements were negotiated by Kathleen M. Vyborny, a solo practitioner, on behalf of plaintiffs and Joyce and Kubasiak, P.C., on behalf of the Treasurer. Winston & Strawn did not have any role in negotiating the second restructuring agreements and, along with plaintiffs, merely received circulation copies of the preliminary drafts of the agreements from Joyce and Kubasiak. Apparently, the terms of the second restructuring agreements were very favorable to plaintiffs. Under the original agreements, the loans carried an interest rate of 12.25% and plaintiffs were required to make monthly payments and repay the loans within seven years. Under the second restructuring agreements, the interest rate was reduced to 6% and plaintiffs were only required to make quarterly payments from cash flow available, if

any, after operating expenses. Additionally, any unpaid interest was deferred on an interest-free basis until the principal was paid and, absent fraud or malfeasance, the loans could not be defaulted until 1999 even if plaintiffs were unable to make any payments due to a lack of cash flow.

The second restructuring agreements also required that plaintiffs provide the trustee with audited financial statements "of the Mortgage Property and [of the] Borrower" certified by an accounting firm approved by the trustee and prepared in accordance with generally accepted accounting principles. In addition to the requirement that plaintiffs provide the trustee with audited financial statements, the second restructuring agreements also obligated plaintiffs to deliver to the trustee a reliance letter from the accounting firm "in form acceptable to Trustee, acknowledging Trustee's reliance on such Financial Statements or other financial information."

In 1991, Patrick Quinn became Illinois State Treasurer. On September 4, 1991, after American National and plaintiffs had entered into the second restructuring agreements, Treasurer Quinn replaced American National with Bank One as trustee and loan administrator. According to the affidavit of David Milling, the trust administrator at Bank One, Winston & Strawn prepared "certain legal documents pursuant to which the responsibilities and duties of [the] Trustee under the Program Trust Agreement were transferred from American to Bank One." Additionally, Milling's affidavit avers that, as successor trustee and pursuant to authorization and direction from the Treasurer's office, Bank One reimbursed American $7,500, which American National paid to Winston & Strawn in connection with the transfer of the duties of trustee to Bank One.

After Bank One replaced American National as trustee and administrator, Bank One and the State, through Treasurer Quinn, entered into a new Mortgage Program agreement. This new agreement expanded the trustee's responsibilities with regard to servicing Mortgage Program loans and also greatly increased the treasurer's power to control and direct the actions of the trustee. At no time did Winston & Strawn represent Bank One, Treasurer Quinn or the State.

Pursuant to a letter dated January 16, 1992, Bank One provided plaintiffs with the names of seven accounting firms which it and Treasurer Quinn would find acceptable for the annual audits. Bank One noted that the purpose of the audits was "to determine, among other things, whether sufficient payments have been made to comply with the cash flow repayment system agreed to by you in the second restructuring." In March 1992, Bank One approved the accounting

firm of Altschuler, Melvoin & Glasser (Accountant) to conduct the audits. After the audits were completed, the audit reports and a reliance letter from the Accountant were submitted to Bank One. Treasurer Quinn's office directed Bank One to reject the reliance letter because it was not in the exact language which they had informed plaintiffs would be acceptable to them. Plaintiffs and the Accountant submitted at least six additional alternative drafts of the reliance letter. Bank One, at the direction of the Treasurer's office, also proposed two other slightly different formats for the letters. Ultimately, however, all the alternative drafts submitted by plaintiffs and the Accountant were rejected. During these "negotiations" on the language of an acceptable reliance letter, the Treasurer's office authorized Bank One to grant at least two extensions of the deadline. The last deadline for the submitting of an acceptable reliance letter was May 1, 1992. Upon the expiration of the final deadline, defendants stated their intention to declare plaintiffs' loans in default.

On May 5, 1992, plaintiffs filed a verified complaint for injunctive relief, declaratory judgment and specific performance. Plaintiffs asserted that defendants were unreasonably and wrongfully refusing to accept the Accountant's reliance letters, that the reliance letters were standard and customary, that the refusal to accept the letters was in violation of Bank One's legal duty, and that the refusal was pursuant to an unlawful scheme by Treasurer Quinn to void the second restructuring agreements and rescind the Mortgage Program. As evidence of this unlawful scheme, plaintiffs cited to several newspaper articles which reported Treasurer Quinn's belief that these were bad loans and his desire to declare the loans in default. Plaintiffs also filed an emergency motion for a temporary restraining order (TRO). The trial court entered a TRO which precluded defendants from declaring the loans in default, from impairing the loans, and from taking any action adverse to plaintiffs' security or injurious to the hotels.

On May 19, 1992, defendants filed a motion pursuant to sections 2—615 and 2—619(a)(1) of the Illinois Code of Civil Procedure (Ill. Rev. Stat. 1991, ch. 110, pars. 2—615, 2—619(a)(1) (now 735 ILCS 5/2—615, 2—619 (West 1992))) to dissolve the TRO and dismiss the complaint on the ground that sovereign immunity barred plaintiffs' suit in the circuit court. Defendants also moved to have Winston & Strawn disqualified as counsel for plaintiffs because the firm previously had represented American National when American National was trustee of the Mortgage Program.

On July 1, 1992, the trial court granted defendants' motions. The court reasoned that sovereign immunity barred suit in the circuit court because any duty imposed upon Treasurer Quinn which he may have breached was imposed on him by virtue of his State employment. Therefore, the court dismissed plaintiffs' complaint and held:

> "The Court of Claims has exclusive jurisdiction over this action because it is a claim against the State founded upon a contract entered into with the State of Illinois. (Ill. Rev. Stat. 1989, ch. 37, par. 439.8.) The loan agreements are contracts with the State, and thus any action based on those contracts must be pursued in the Court of Claims."

The court also disqualified Winston & Strawn from representing plaintiffs in their action against Bank One and Treasurer Quinn because of the firm's former representation of American National in connection with the Mortgage Program.

Plaintiffs appealed both orders.

Plaintiffs' first contention on appeal is that the doctrine of sovereign immunity does not apply to this case because Treasurer Quinn acted unlawfully, in excess of his statutory and legal authority and arbitrarily and capriciously interfered with the second restructuring agreements between Bank One and plaintiffs "by instructing Bank One, as Trustee, not to accept reasonable and standard Reliance Letters provided by the Accountant."

■ Sovereign immunity exists in Illinois pursuant to statute and mandates that the State or a department of the State cannot be a defendant in an action brought directly in the circuit court. (Ill. Rev. Stat. 1991, ch. 37, par. 439.1 *et seq.* (now 705 ILCS 505/1 *et seq.* (West 1992)); *Smith v. Jones* (1986), 113 Ill. 2d 126, 132, 497 N.E.2d 738, 740.) Section 8 of the Court of Claims Act also provides in pertinent part that the Court of Claims has exclusive jurisdiction to hear and determine "[a]ll claims against the state founded upon any contract entered into with the State of Illinois." (Ill. Rev. Stat. 1991, ch. 37, par. 439.8 (now 705 ILCS 505/8 (West 1992)).) Additionally, the prohibition "against making the State of Illinois a party to a suit cannot be evaded by making an action nominally one against the servants or agents of the State when the real claim is against the State of Illinois itself and when the State of Illinois is the party vitally interested." (*Sass v. Kramer* (1978), 72 Ill. 2d 485, 491, 381 N.E.2d 975, 977.) Therefore, the determination of whether an action is against the State "does not depend on the identity of the formal parties, but rather on the issues raised and the relief sought." (*Senn Park Nursing Center v. Miller* (1984), 104 Ill. 2d 169, 186, 470 N.E.2d 1029, 1038.) If a judgment for plaintiff could operate to control the actions of the State or subject it to liability, the action is effectively against

the State and is barred by sovereign immunity. (*Currie v. Lao* (1992), 148 Ill. 2d 151, 158, 592 N.E.2d 977, 980.) The justification advanced in support of the doctrine is that it "protects the State from interference in its performance of the functions of government and preserves its control over State coffers." *S.J. Groves & Sons Co. v. State of Illinois* (1982), 93 Ill. 2d 397, 401, 444 N.E.2d 131, 133.

However, it is presumed that the State or a department of the State does not violate the laws or constitution of the State and that, if such a violation does occur, it is solely an action of the servant or agent of the State. (*City of Springfield v. Allphin* (1978), 74 Ill. 2d 117, 124, 384 N.E.2d 310, 313.) Accordingly, "[w]hile legal official acts of State officers are in effect acts of the State itself, illegal acts performed by the officers are not, and when a State officer performs illegally or purports to act under an unconstitutional act or under authority which he does not have, a suit may be maintained against the officer and is not an action against the State of Illinois." *Sass*, 72 Ill. 2d at 492, 381 N.E.2d at 977.

■ Plaintiffs' first attempt to fall within an exception to the bar of sovereign immunity is by asserting that Treasurer Quinn's actions are in violation of "Illinois Privity Law." Plaintiffs' complaint contains no allegation that Treasurer Quinn's actions are in violation of "Illinois Privity Law." In the absence of such an allegation, therefore, their complaint cannot be saved now by arguing such a violation on review. (*Smith*, 113 Ill. 2d at 134, 497 N.E.2d at 741.) Moreover, no such rule of law exists. Plaintiffs generally cite to the Illinois Public Accounting Act (Act) (Ill. Rev. Stat. 1991, ch. 111, par. 5500.01 *et seq.* (now 225 ILCS 450/0.01 (West 1992))) in support of this assertion. The Act regulates the practice of accounting and sets forth the necessary requirements to be a public accountant, the manner of becoming licensed, and the procedures for disciplining public accountants. Presumably, when plaintiffs refer to "Illinois Privity Law," they are referring to section 30.1 of the Act which, except for in certain enumerated situations, limits an accountant's liability to only those persons with whom the accountant is in privity of contract. (Ill. Rev. Stat. 1991, ch. 111, par. 5535.1 (now 225 ILCS 450/30.1 (West 1992)).) Neither this section nor any other section of the Act dictates the specific language to be used in a "standard and customary" reliance letter nor does any section impose any legal duty on Treasurer Quinn or any other State agent.

■ Plaintiffs also argue that Treasurer Quinn's actions are in violation of "a legal opinion of the Attorney General" that the second restructuring agreements are valid contracts. First, this argument necessarily assumes that Attorney General opinions are legal author-

ity. They are not. Even if a declaration of default would be in contravention of the Attorney General opinion, Treasurer Quinn would not be violating any State law; he would merely be going against the advice of his attorney.

Moreover, Treasurer Quinn's actions do not conflict with the Attorney General's opinion. In November 1991, the Attorney General issued an opinion in which he concluded that neither an insufficiency of consideration nor the lack of the contract's approval by the Attorney General rendered the second restructuring agreements invalid. Treasurer Quinn is not now claiming that the contracts lacked consideration or are invalid because the Attorney General did not give his prior approval. He has expressed his intent to declare a default on the loans because of plaintiffs' alleged failure to provide him with reliance letters "in form acceptable to Trustee" as required by the second restructuring agreements. On the surface at least, his actions are based on plaintiffs' purported failure to comply with the contract and not on the belief that the contracts themselves are invalid. Therefore, Treasurer Quinn's actions are not contrary to the Attorney General opinion.

In order to determine whether one of the exceptions to sovereign immunity applies, we must examine plaintiffs' complaint. Plaintiffs do not sufficiently allege that defendants violated the constitution, a statute or a law of Illinois. Rather, in their complaint, plaintiffs make repeated references to "defendants' unreasonable and wrongful refusal to abide by the terms of the Second [Restructuring] Agreement." Plaintiffs allege that the "declaration of default by defendants is in violation of the Second [Restructuring] Agreements," that defendants demanded a reliance letter in "a form beyond the requirements of the Second [Restructuring] Agreement as well as industry custom and practice," that "defendants' unreasonable refusal to accept the tendered performance they agreed to is not a legitimate ground for default," and that "[Treasurer] Quinn's wrongful refusal to accept any one of the seven Reliance Letters is part of an unlawful scheme to declare [plaintiffs'] loans in default, all in contravention of [plaintiffs'] full performance of the Second [Restructuring] Agreement, a valid and existing contract." As evidence of this "unlawful scheme," plaintiffs point out that Treasurer Quinn has stated in the past that the loans were "perverted" and that he wanted to declare the loans in default. In their brief, plaintiffs characterize these statements as evidence that Treasurer Quinn's actions are "to serve his own personal agenda," that he is "a State official who is bent on furthering his own interests regardless of the law," and that he "has apparently put his political aspirations above his duties."

■ Words such as "violation," "unlawful" and "wrongful" are mere conclusions and not "magic words" which will place what is otherwise a contract action against the State within a recognized exception to the bar of sovereign immunity. (See *Betts v. Department of Revenue* (1979), 78 Ill. App. 3d 102, 108, 396 N.E.2d 1150, 1154.) The characterization of an action depends upon the factual underpinnings of the case and the law necessary to arrive at a conclusion. In substance, the factual allegations of plaintiffs' complaint are that Treasurer Quinn exceeded his authority by breaching the second restructuring agreement and plaintiffs' action is one seeking to enforce the terms of the contract. Plaintiffs concede that Treasurer Quinn has been granted full authority by the State to direct the activities of Bank One in relation to the trust estate. Thus, it is clearly within Treasurer Quinn's granted authority to direct Bank One to declare a default even if his actions may ultimately be found to be in violation of the second restructuring agreement. In light of the facts of this case, were we to accept plaintiffs' argument, then every time a State official signed a contract, any of his acts under the contract with which the other party disagreed would become enforceable in the circuit court under the theory that the official exceeded his authority or abused his discretion. See *Local 3236 of the Illinois Federation of State Office Educators v. Illinois State Board of Education* (1984), 121 Ill. App. 3d 160, 164, 459 N.E.2d 300, 303.

Plaintiffs' claim, therefore, alleges a breach of contract. Such a claim is against the State, barred by the doctrine of sovereign immunity, and must be brought in the Court of Claims. Ill. Rev. Stat. 1991, ch. 37, par. 439.8(b) (now 705 ILCS 505/8(b) (West 1992)); *Smith*, 113 Ill. 2d at 132, 497 N.E.2d at 740; *Magna Trust Co. v. Department of Transportation* (1992), 234 Ill. App. 3d 1068, 1071, 600 N.E.2d 1317, 1320; *Local 3236*, 121 Ill. App. 3d at 164, 459 N.E.2d at 303.

We also take time to note that plaintiffs' repeated personal attacks on Treasurer Quinn's actions as being motivated by his own "personal agenda" and "political aspirations" and their assertions that he would place these interests above his duties and the law are not conclusions that an *objective* observer would necessarily draw from the fact that Quinn has previously criticized the agreements with the plaintiffs. As Treasurer, it is Quinn's duty to protect State monies and investments using all legal means within his grant of authority. In light of the fact that these loans are at below market interest rates and are long-term obligations with "virtually no default component or ability to foreclose," many reasonable citizens without ulterior motives may agree with Quinn's characterization of them as "perverted."

Moreover, Treasurer Quinn's motivations have no relevance whatsoever to the issues before us and plaintiffs' characterization of them do nothing to further their arguments. Even assuming Treasurer Quinn has a personal "vendetta" against plaintiffs, he still has the authority to declare a default if plaintiffs do not comply with the agreements and plaintiffs are not immune from a default simply because it may bring Treasurer Quinn "joy" to declare it.

Plaintiffs' second contention is that the circuit court, and not the Court of Claims, has exclusive jurisdiction over a case that only seeks equitable relief. Plaintiffs cite a number of opinions issued by the Court of Claims in which the claims court itself states that it does not have authority to grant equitable relief. Plaintiffs argue that, since the Court of Claims cannot grant equitable relief, the circuit court has jurisdiction over cases seeking such relief.

■ As stated above, under section 8(b) of the Court of Claims Act, the court has exclusive jurisdiction over "[a]ll claims against the state founded upon any contract entered into with the State of Illinois." (Emphasis added.) (Ill. Rev. Stat. 1991, ch. 37, par. 439.8(b) (now 705 ILCS 505/8(b) (West 1992)).) Whether a claim is against the State depends upon the issues raised, the relief sought (Miller, 104 Ill. 2d at 186, 470 N.E.2d at 1038) and whether a judgment for plaintiff could operate to control the actions of the State or subject it to liability. (Currie, 148 Ill. 2d at 158, 592 N.E.2d at 980.) In S.J. Groves (93 Ill. 2d at 404-05, 444 N.E.2d at 134), the supreme court stated that the codification of public policy is for the legislature and that, although the State is definitely obligated under its contracts, there is "no requirement that parties to a contract have mutual remedies in the event of a breach." The court held, therefore, that it is a constitutional exercise of the legislature's power for it to limit an individual's available remedy by providing that the State can only be sued for a breach of an ordinary business contract in the Court of Claims even if the result is to "leave a claimant without any remedy." S.J. Groves, 93 Ill. 2d at 404-05, 444 N.E.2d at 134.

Subsequently, in Ellis v. Board of Governors of State Colleges & Universities (1984), 102 Ill. 2d 387, 395, 466 N.E.2d 202, 206, the court held that the circuit court does not necessarily have jurisdiction over claims for injunctive relief. The Ellis court pointed out that all contract claims against the State must be brought in the Court of Claims and whether a claim is against the State depends upon whether it "has the potential to subject the State to liability." (Ellis, 102 Ill. 2d at 395, 466 N.E.2d at 207.) The Ellis court concluded that plaintiffs' claim was barred by sovereign immunity even though it sought injunctive relief in addition to money damages because it had

the potential to subject the State to liability. Numerous other courts of this State also have held that the Court of Claims Act encompasses all contract claims against the State and have rejected the argument that the circuit court has jurisdiction simply because the Court of Claims may not have authority to grant equitable relief. (See *Hudgens v. Dean* (1979), 75 Ill. 2d 353, 388 N.E.2d 1242 (action for mandatory injunction a suit against the State and thus barred by sovereign immunity); *Magna Trust*, 234 Ill. App. 3d 1068, 600 N.E.2d 1317 (following *Ellis*, action for specific performance barred by sovereign immunity even though Court of Claims had no authority to grant such a remedy); *Brando Construction, Inc. v. Department of Transportation* (1985), 139 Ill. App. 3d 798, 487 N.E.2d 1132 (contract action seeking a mandatory injunction against State barred by sovereign immunity); *Brucato v. Edgar* (1984), 128 Ill. App. 3d 260, 470 N.E.2d 615 (jurisdiction of Court of Claims is not limited to money claims); *Local 3236*, 121 Ill. App. 3d 160, 459 N.E.2d 300 (Court of Claims Act encompasses all claims against the State founded upon a contract and there is no exception for equitable claims); *Betts*, 78 Ill. App. 3d 102, 396 N.E.2d 1150 (complaint seeking equitable relief against the State is barred by sovereign immunity); *Struve v. Department of Conservation* (1973), 14 Ill. App. 3d 1092, 303 N.E.2d 32 (regardless of the relief sought, a contract claim against the State must be resolved in the Court of Claims).) As the *S.J. Groves* court observed, "[i]f the inequities inherent in the doctrine of sovereign immunity are to be remedied, it is for the legislature and not this court to act." *S.J. Groves*, 93 Ill. 2d at 407, 444 N.E.2d at 136.

Accordingly, since plaintiffs' claim is against the State and is founded upon contract, it is barred by the doctrine of sovereign immunity from being brought in the circuit court and was properly dismissed.

Plaintiffs' final contention is that the court's decision to disqualify Winston & Strawn from representing them in this action was erroneous because defendants are not former clients of Winston & Strawn and Winston & Strawn's former representation of American National was not "substantially related" to the subject matter of this litigation.

An attorney is prohibited from suing a former client in a matter "substantially related" to his previous representation of the client. (*La Salle National Bank v. Triumvera Homeowners Association* (1982), 109 Ill. App. 3d 654, 664, 440 N.E.2d 1073, 1080.) The canons of the Illinois Code of Professional Responsibility which are oft cited in support of this rule are Canon 4 which mandates that a lawyer "preserve the confidences and secrets of a client" and Canon 9 which

cautions that "[a] lawyer should avoid even the appearance of professional impropriety." (*La Salle National Bank*, 109 Ill. App. 3d at 664, 440 N.E.2d at 1080.) A "substantial relationship" which justifies disqualification will be found when "the matters embraced within the pending suit wherein [a client's] former attorney appears on behalf of his adversary are substantially related to the matters or cause of action wherein the attorney previously represented him, the former client." (*La Salle National Bank*, 109 Ill. App. 3d at 664, 440 N.E.2d at 1080.) The rationale behind this rule is that, if the matters were substantially related, "the lawyer could have obtained confidential information in the first representation that would have been relevant in the second." (*Analytica, Inc. v. NPD Research, Inc.* (7th Cir. 1983), 708 F.2d 1263, 1266.) Finally, a trial court's determination on a motion to disqualify will not be disturbed absent a showing of abuse of discretion. *Skokie Gold Standard Liquors, Inc. v. Joseph E. Seagram & Sons, Inc.* (1983), 116 Ill. App. 3d 1043, 1053, 452 N.E.2d 804, 812.

■ Under the unique facts of this case, we believe the trial court erred in disqualifying Winston & Strawn. Winston & Strawn never represented Bank One, the State Treasurer, or the State. Winston & Strawn also did not participate in the renegotiation of the restructuring agreements. Winston & Strawn was retained by American National solely to advise it regarding the nature and scope of its responsibilities under the Program Trust Agreement that American National had entered into with the State. Although American National had a fiduciary relationship with the State, no such relationship existed between Winston & Strawn and the State. Winston & Strawn's obligation was to its client and, theoretically, its advice could have been contrary to the State's interests. Therefore, Winston & Strawn's position was adverse to the State because its duties to its client related to advice regarding a contract with the State. Consequently, we do not believe Winston & Strawn's representation of American National was substantially related to the matters at issue here or that Winston & Strawn was privy to any confidential information. Thus, Canon 4 cannot support Winston & Strawn's disqualification. (134 Ill. 2d Canon 4.) Moreover, if a "substantial relationship" is not shown, no confidences have been shared or the presumption that confidences have been shared is rebutted, an attorney cannot be disqualified solely on the ground that there exists "an appearance of impropriety" because Canon 9 by itself is "simply too weak and too slender a reed" upon which to order disqualification. (*Index Futures Group, Inc. v. Street* (1987), 163 Ill. App. 3d 654, 659, 516 N.E.2d 890, 894.) Therefore, Winston & Strawn should not have been disqualified.

Accordingly, for the foregoing reasons, we affirm the dismissal of plaintiffs' action in the circuit court, but reverse the disqualification of Winston & Strawn.

Affirmed in part; reversed in part.

CAMPBELL, P.J., and O'CONNOR, J., concur.