KERR-McGEE CHEMICAL CORPORATION, Plaintiff-Appellee, v. THE DEPARTMENT OF NUCLEAR SAFETY, Defendant-Appellant.

Fourth District   No. 4—90—0330

Opinion filed October 18, 1990.

Neil F. Hartigan, Attorney General, of Springfield (Robert J. Ruiz, Solicitor General, and Rosalyn B. Kaplan, Assistant Attorney General, of Chicago, of counsel), for appellant.

Patrick J. Cadigan, of Hinshaw, Culbertson, Moelmann, Hoban & Fuller, of Springfield, and Peter J. Nickles, Richard A. Meserve, and Bette Orr, all of Covington & Burling, of Washington, D.C., for appellee.

JUSTICE STEIGMANN delivered the opinion of the court:

■■ This case is an outgrowth of a controversy over the disposal of nuclear waste on property owned by plaintiff Kerr-McGee Chemical Corporation (Kerr-McGee) in West Chicago. The principal question presented is whether Kerr-McGee may challenge, by means of a declaratory judgment action, rules promulgated by defendant Illinois Department of Nuclear Safety (Department) pertaining to nuclear waste, which are not currently in effect because the State has not yet received permission from the Nuclear Regulatory Commission (NRC) to

regulate the type of nuclear waste covered by the rules. We hold the question of whether the rules are valid is not yet ripe for decision and reverse the order of the circuit court which denied the Department's motion to dismiss Kerr-McGee's complaint for declaratory judgment.

■ Although nuclear energy and related matters are generally subject to regulation by the NRC, under certain circumstances the States may assume regulatory authority in this area. (42 U.S.C. §2021 (1988).) In order to assume such regulatory authority, the States must, among other things, promulgate rules that meet NRC requirements. 42 U.S.C. §§2021(d), (o) (1988); 46 Fed. Reg. 7540, 7544 (1981) (criteria 30, 32).

Accepting as true the well-pleaded facts of Kerr-McGee's complaint for declaratory judgment (*Martin v. Federal Life Insurance Co.* (1982), 109 Ill. App. 3d 596, 601, 440 N.E.2d 998, 1003), Kerr-McGee asserted that it is the owner of a former thorium milling facility in West Chicago and that nuclear waste, consisting of thorium mill tailings and associated materials, is present on this site. Since 1979, Kerr-McGee has sought a license amendment from the NRC to permit stabilization and closure of its West Chicago facility. After two full evaluations of the site, the NRC staff recommended "on-site stabilization" of the nuclear waste at Kerr-McGee's West Chicago facility.

The proposal to indefinitely store nuclear waste at Kerr-McGee's West Chicago facility displeased the Department, which preferred the nuclear waste to be stored elsewhere. Consequently, the Department, in proceedings before the NRC, opposed the on-site stabilization plan recommended by the NRC staff.

On April 28, 1989, the Department published proposed rules which set forth "Licensing Requirements for Source Material Milling Facilities" (13 Ill. Reg. 5874 (1989)), as part of the procedures requisite to obtain permission from the NRC to exercise regulatory authority over nuclear waste, such as those present at Kerr-McGee's West Chicago facility. According to Kerr-McGee, its West Chicago facility is the only site in Illinois to which these rules could possibly apply. After making only minor modifications in the rules in response to Kerr-McGee's comments, the Department adopted them in final form on January 19, 1990. 14 Ill. Reg. 1333—78 (adopted Jan. 19, 1990).

Kerr-McGee alleged that the Department's effort to obtain jurisdiction over its West Chicago facility was designed to thwart the nearly completed proceedings before the NRC for on-site disposal of nuclear waste at the facility. Also, Kerr-McGee argued that the Department's rules pertaining to its West Chicago facility were tailored to further the Department's ability to obtain in State court an injunc-

tion against Kerr-McGee's on-site disposal plan.

Kerr-McGee alleged that the Department's rules relating to source-material milling facilities are invalid because (1) they violate the Illinois Constitution's proscription of special legislation (Ill. Const. 1970, art. IV, §13); (2) they are contrary to various provisions of the Atomic Energy Act of 1954 (42 U.S.C. §§2021(o), 2114(c) (1988)); (3) they are inconsistent with and different from parallel Federal regulations governing nuclear by-product materials (10 C.F.R. pt. 40, app. A (1989)); (4) they amount to "targeted" rulemaking, which is an impermissible mix of regulatory and litigation functions within the Department and exceeds the Department's statutory authority; and (5) they are arbitrary, unreasonable, and capricious, and impose unreasonable regulatory burdens in that they (a) do not recognize existing NRC licenses for nuclear facilities and permit the Department to revoke such licenses, (b) do not provide for transfer to the Department and action by the Department on nuclear facility license and license amendment applications pending before the NRC, and (c) do not make appropriate distinctions between existing tailings sites and new tailings sites.

On the basis of the above allegations, Kerr-McGee asserted that an actual controversy exists between it and the Department. Kerr-McGee requested that a declaratory judgment be entered against the Department, holding its rules prescribing licensing requirements for source-material milling facilities to be arbitrary, capricious, contrary to law, and, accordingly, null and void. Kerr-McGee also requested such other relief "as is appropriate under the circumstances."

The Department filed a motion to dismiss Kerr-McGee's complaint for declaratory judgment on the bases that the action was premature and no actual controversy existed between it and Kerr-McGee. The Department pointed out that no agreement had yet been executed between Illinois and the NRC allowing the State to regulate nuclear waste of the type present at Kerr-McGee's West Chicago facility and, thus, the State is incapable of exercising regulatory authority over the site. The circuit court denied this motion, but allowed the Department's motion to certify for appeal the question presented by the Department's motion to dismiss. (See 107 Ill. 2d R. 308 (allowing interlocutory appeals by permission).) The court stated the question as follows:

" 'Whether, under the circumstances of this case, an actual controversy exists between plaintiff and defendant which entitles plaintiff to bring an action for declaratory judgment under Section 2—701 of the Code of Civil Procedure.' "

This court allowed the Department's motion for leave to appeal, pursuant to Supreme Court Rule 308 (107 Ill. 2d R. 308).

The positions of the parties to this appeal are quite simple. The Department contends there is no actual controversy between the parties because the rules which Kerr-McGee challenges are not presently effective and will not become effective unless, and until, the NRC permits the State to exercise regulatory authority over nuclear waste of the type present at Kerr-McGee's West Chicago facility. The Department points out that because there is no certainty that this will ever occur, there is no certainty that the rules Kerr-McGee challenges will ever become applicable to Kerr-McGee. The Department argues that the courts should not be burdened with declaratory judgment actions such as this, which may well prove to be entirely advisory or hypothetical in nature.

Kerr-McGee states that its complaint alleges facts which establish an actual controversy exists between it and the Department and, therefore, properly states an action for a declaratory judgment. Kerr-McGee asserts that the posture of this case, in terms of the record and issues presented for review, is exactly the same as that in a case requesting judicial review of agency rulemaking. Kerr-McGee contends that the question of whether the rules at issue here are invalid under State law is of direct and immediate relevance to the NRC's decision as to whether the State should be allowed to assume regulatory authority over Kerr-McGee's West Chicago facility. Kerr-McGee suggests that holding these rules invalid on State law grounds after the NRC has transferred regulatory authority to the State could create a regulatory vacuum with respect to its West Chicago facility. Kerr-McGee maintains that neither a threat of immediate enforcement of a statute, a threat of personal injury, nor a threat of imminent harm is necessary before a declaratory judgment action to determine the validity of statutes or regulations may be maintained, and the fact that the occurrence of some future event is a prerequisite to enforcement of administrative rules is of no consequence in determining whether they may be challenged in a declaratory judgment action.

■■ ■ Finally, Kerr-McGee maintains that if it waits until the NRC grants the Department permission to assume regulatory control over nuclear waste sites, such as its West Chicago facility, to contest the Department's rules governing source-material milling facilities, it might never be able to challenge the rules. This argument is grounded on a two-year limitation period on actions to challenge administrative rules for noncompliance with section 5 of the Illinois Administrative Procedure Act (Act) (Ill. Rev. Stat. 1989, ch. 127, par. 1005(b)), and

there is no assurance that the NRC will rule on the State's request to assume regulatory authority within two years of the effective date of the rules at issue in the present case. The Department responds to this argument by stating that Kerr-McGee does not assert any challenge to its rules which is subject to the two-year limitation period contained in section 5 of the Act.

Section 2—701 of the Civil Practice Law provides:

> "The court may, in cases of actual controversy, make binding declarations of rights, having the force of final judgments, whether or not any consequential relief is or could be claimed, including the determination, at the instance of anyone interested in the controversy, of the construction of any statute, municipal ordinance, or other governmental regulation *** and a declaration of the rights of the parties interested. *** The court shall refuse to enter a declaratory judgment or order, if it appears that the judgment or order, would not terminate the controversy or some part thereof, giving rise to the proceeding." (Ill. Rev. Stat. 1989, ch. 110, par. 2—701(a).)

In order to maintain a declaratory judgment action, one need not have suffered an actual injury by virtue of a statutory enactment, and prosecution need not be imminent. However, the underlying facts and issues may not be premature or moot, and the courts should refrain from rendering advisory opinions or providing guidance regarding future events. (*Illinois Gamefowl Breeders Association v. Block* (1979), 75 Ill. 2d 443, 450, 389 N.E.2d 529, 531.) It is presumed that a validly enacted statute will be enforced (*Hoagland v. Bibb* (1957), 12 Ill. App. 2d 298, 303, 139 N.E.2d 417, 420), and a declaratory judgment action may be maintained where a statute casts doubt, uncertainty, and insecurity upon a plaintiff's rights or status and thereby damages his pecuniary or material interests. (*Oak Park Trust & Savings Bank v. Town of Palatine* (1981), 100 Ill. App. 3d 674, 679, 427 N.E.2d 298, 301.) In other words, a declaratory judgment action may be maintained where statutes or administrative rules, which have cleared all hurdles prerequisite to their becoming fully effective, require one either to take a certain action or to refrain from a certain action, regardless of the actual probability of prosecution for noncompliance.

Measured by the above principles, Kerr-McGee's complaint does not state a cause of action for a declaratory judgment. At present, the rules Kerr-McGee seeks to invalidate impose no duties on Kerr-McGee. They require Kerr-McGee neither to take any action nor to refrain from taking any action in which it is presently engaged or plans to be engaged. These rules will impose duties on Kerr-McGee only if

and when the NRC allows the State to assume regulatory control over nuclear waste such as that at Kerr-McGee's West Chicago facility.

It is possible that the rules at issue here will never become applicable to Kerr-McGee. The NRC may find, for instance, that the rules themselves are not in harmony with parallel Federal regulations, or the NRC may find other shortcomings in the Department's proposed regulatory scheme which result in the NRC's denying the State's request to assume regulatory control over source-material milling facilities. Disapproval by the NRC of the Department's rules governing such facilities could require the Department to withdraw the rules and substantially rewrite them. This could conceivably occur more than once. Under this scenario, Illinois courts could determine the validity of several sets of rules which, due to action by a Federal regulatory agency, would never become effective. In these days of congested court dockets, we cannot countenance the possibility of a proceeding, or a series of proceedings, which would culminate in purely advisory decisions.

■ Moreover, the most complex issues raised by Kerr-McGee's complaint for declaratory judgment are those which involve questions of whether there is a conflict between the Department's regulations which Kerr-McGee challenges and Federal statutes and regulations pertaining to the same subject. Compared to these questions, the State law issues raised in Kerr-McGee's complaint—whether the Department's regulations violate the Illinois Constitution's proscription of special legislation and whether they amount to impermissible "targeted" rule-making—would be easy to resolve. Under the doctrine of primary jurisdiction, courts should defer decisions on matters which are within the specialized technical expertise of an administrative agency until the appropriate administrative agency has had an opportunity to consider them. (*Kellerman v. MCI Telecommunications Corp.* (1986), 112 Ill. 2d 428, 444-45, 493 N.E.2d 1045, 1052, *cert. denied* (1986), 479 U.S. 949, 93 L. Ed. 2d 384, 107 S. Ct. 434.) There are few cases in which application of this doctrine would be more appropriate than the present case. The NRC is unquestionably better qualified than the Illinois courts to consider, in the first instance, the complex questions concerning the meaning of Federal statutes and regulations pertaining to nuclear safety which are presented by Kerr-McGee's complaint for declaratory judgment.

■ Contrary to Kerr-McGee's contentions, invalidation of rules promulgated by the Department governing source-material milling facilities after the NRC has given the State authority to regulate such facilities would not result in a regulatory vacuum. If the Department's

rules would be invalidated on State law grounds after becoming effective, and the State law deficiencies in them could be cured, the Department could propose new rules which conform to State law. It would be highly unlikely that the changes designed to bring the rules in conformity with State law would create questions as to whether they conformed to Federal statutes and regulations pertaining to nuclear safety and, thus, the validity of the second set of rules could be considered by the Illinois courts on an expedited basis. In the meantime, the Department could exercise its emergency (Ill. Rev. Stat. 1989, ch. 127, par. 1005.02) or peremptory (Ill. Rev. Stat. 1989, ch. 127, par. 1005.03) rulemaking powers to enact temporary rules to regulate source-material milling facilities. If for any reason it would prove impossible for the Department to fill a regulatory gap stemming from invalidation of its rules on State law grounds after the NRC had given the State authority to regulate source-material milling facilities, the NRC would have authority to do so. Section 2021(j) of the Atomic Energy Act of 1954 provides:

"(j) Reserve power to terminate or suspend agreements; emergency situations; State nonaction on causes of danger; authority exercisable only during emergency and commensurate with danger[.]

(1) The Commission, upon its own initiative after reasonable notice and opportunity for hearing to the State with which an agreement under subsection (b) of this section has become effective, or upon request of the Governor of such State, may terminate or suspend all or part of its agreement with the State and reassert the licensing and regulatory authority vested in it under this chapter, if the Commission finds that (1) such termination or suspension is required to protect the public health and safety, or (2) the State has not complied with one or more of the requirements of this section. The Commission shall periodically review such agreements and actions taken by the States under the agreements to ensure compliance with the provisions of this section.

(2) The Commission, upon its own motion or upon request of the Governor of any State, may, after notifying the Governor, temporarily suspend all or part of its agreement with the State without notice or hearing if, in the judgment of the Commission:

(A) an emergency situation exists with respect to any material covered by such an agreement creating danger which requires immediate action to protect the health or safety of

persons either within or outside the State, and

 (B) the State has failed to take steps necessary to contain or eliminate the cause of the danger within a reasonable time after the situation arose.

A temporary suspension under this paragraph shall remain in effect only for such time as the emergency situation exists and shall authorize the Commission to exercise its authority only to the extent necessary to contain or eliminate the danger." (42 U.S.C. §2021(j), at 449 (1988).)

Given the Department's emergency and peremptory rulemaking powers, as well as the NRC's authority to terminate or suspend State authority to regulate nuclear materials, there is no possibility that source-material milling facilities would be left unregulated as a result of the Department's rules being invalidated on State law grounds after the State has obtained authority to exercise regulatory jurisdiction over such facilities.

The cases on which Kerr-McGee mainly relies (*Lake Carriers' Association v. MacMullan* (1972), 406 U.S. 498, 32 L. Ed. 2d 257, 92 S. Ct. 1749; *Underground Contractors Association v. City of Chicago* (1977), 66 Ill. 2d 371, 362 N.E.2d 298; *City of Chicago v. Department of Human Rights* (1986), 141 Ill. App. 3d 165, 490 N.E.2d 53; *Stone v. Omnicom Cable Television of Illinois, Inc.* (1985), 131 Ill. App. 3d 210, 475 N.E.2d 223) do not support its argument that it is presently entitled to challenge the Department's rules by means of a declaratory judgment action. All these cases involved statutes or procedures which, unlike the rules here at issue, were in full force and effect at the time the declaratory judgment action was filed. The same is true of actions requesting judicial review of agency rulemakings. See *A.E. Staley Manufacturing Co. v. Illinois Commerce Comm'n* (1988), 166 Ill. App. 3d 202, 206, 519 N.E.2d 1130, 1133.

■ We also find no merit in Kerr-McGee's argument based on section 5 of the Act. (Ill. Rev. Stat. 1989, ch. 127, pars. 1005 through 1005.04.) As noted by Kerr-McGee, a challenge to an administrative rule based on noncompliance with this section must be commenced within two years of the rule's effective date. (Ill. Rev. Stat. 1989, ch. 127, par. 1005(b).) Subsections 5.02, 5.03, and 5.04 (Ill. Rev. Stat. 1989, ch. 127, pars. 1005.02, 1005.03, 1005.04) concern emergency rulemaking, peremptory rulemaking, and automatic repeal of rules. Clearly, none of these subsections are applicable to the case at bar. Subsection 5.01 (Ill. Rev. Stat. 1989, ch. 127, par. 1005.01) deals with public notice and comment requirements for proposed rules, notice to and action by the joint committee on administrative rules as to pro-

posed rules, and the publication of adopted rules. In its complaint for declaratory judgment, Kerr-McGee does not allege the Department failed to comply with any of the procedural requirements prescribed by section 5 of the Act in promulgating the rules at issue in the present case. Therefore, under the facts of this case, there is no possibility that Kerr-McGee will be barred from asserting any of its objections to the disputed rules by virtue of the section 5(b) limitations period.

The circuit court order which denied the Department's motion to dismiss is reversed, and this cause is remanded to the circuit court with directions to dismiss Kerr-McGee's complaint for declaratory judgment.

Reversed and remanded with directions.

SPITZ and McCULLOUGH, JJ., concur.