THIRD DIVISION

August 04, 1999

No. 1-97-2121 and 1-97-2384, Consolidated

CGE FORD HEIGHTS, L.L.C.
1
, and CGE FULTON, L.L.C.,

Plaintiffs-Appellants,

     v.

DAN MILLER
1
, RUTH KRETSCHMER, WILLIAM DICKSON
1
, RICHARD KOLHAUSER and KARL McDERMOTT
1
, in Their Individual and Official Capacities as Members of the Illinois Commerce Commission,

Defendants-Appellees

(Commonwealth Edison Company, 

Defendant).

---------------------------------------

THE VILLAGE OF ROBBINS and ROBBINS RESOURCE RECOVERY PARTNERS, L.P.,

Plaintiffs-Appellants,

v.

JAMES EDGAR
2
, in His Official Capacity as the Governor of the State of Illinois; WILLIAM DICKSON
1
, RICHARD KOLHAUSER, RUTH KRETSCHMER, KARL MCDERMOTT
1
, and DAN MILLER
1
, in Their Official Capacities as Commissioners of the Illinois Commerce Commission; KEN ZEHNDER
2
, in His Official Capacity as Director of the Department of Revenue, 

Defendants-Appellees

(Commonwealth Edison Company, 

Defendant).

)

)

)

)

)

)

)

)

)

)

)

)

)

)

)

)

)

)

)

)

)

)

)

)

)

)

)

)

)

)

)

)

)

)

)

)

)

)

)

Appeal from the

Circuit Court of

Cook County

Nos. 96 CH 2560 and        96 CH 12873,          Consolidated

Honorable

Robert Boharic,

Judge Presiding.

MODIFIED ON DENIAL OF REHEARING

PRESIDING JUSTICE CAHILL delivered the opinion of the court:

1
The court granted a motion changing CGE Ford Heights, L.L.C. to New Heights Recovery & Power, L.L.C., and substituting Terry Harvill, Richard Mathias and Edward Hurley for Karl McDermott, Dan Miller and William Dickson.

      
2
The court granted a second motion substituting George Ryan and Glen Bower for James Edgar and Ken Zehnder.

Plaintiffs appeal the dismissal of several counts of their complaints for lack of subject matter jurisdiction.  The counts were directed to the governor, members of the Illinois State Commerce Commission (ISCC) and the Director of the Department of Revenue.  In response to a motion under section 2-619 of the Code of Civil Procedure (735 ILCS 5/2-619 (West 1996)), the trial court dismissed the state defendants based on sovereign immunity.  Counts against Commonwealth Edison (ComEd) remain pending in the trial court.  We affirm dismissal of some of the counts on grounds other than sovereign immunity, reverse the dismissal of others, and remand with directions.

Plaintiffs, CGE Ford Heights L.L.C., CGE Fulton, L.L.C. (CGE), the Village of Robbins, and Robbins Resource Recovery Partners (Partnership), filed two separate complaints, seeking declaratory and injunctive relief to prevent what they allege is retroactive application of Public Act 89-448.  Pub. Act 89-448, §5 (eff. March 14, 1996).  Public Act 89-448 took effect on March 14, 1996, amending a section of the Public Utilities Act commonly referred to as the "Retail Rate Law" (220 ILCS 5/8-403.1 (West 1996)).

The "Retail Rate Law" was first amended in 1987 to encourage burning used tires as a source of energy.  The 1987 amendment authorized qualified solid-waste-to-energy facilities (QSWEF) to enter into 20-year contracts with Illinois electrical utilities for the sale of electricity generated by incinerator plants.  The statute and the parties refer to these incinerator plants as "QSWEFs."  For lack of a livelier acronym, we will live with QSWEF in this opinion, but will more often call them "plants."  The "retail rate" is substantially higher than the wholesale rate the utilities would otherwise pay for electricity bought from private generators of electricity.  Under the statutory scheme, ComEd receives tax credits from the state equal to the difference between the retail rate ComEd pays the plants and the wholesale rate.  The law further requires the plants to reimburse the state for the amount of the tax credits, but only after the debt incurred to build the plant is retired.   

Public Act 89-448 abolished subsidies for tire burning plants.  The amendment redefined QSWEFs as plants that use methane gas generated from landfills.  Plaintiffs, which burn tires, no longer qualify as QSWEFs under the amendment and are not entitled to the retail rate.  While the legislation was pending, ComEd notified plaintiffs that if the bill became  a law, ComEd would no longer pay them the retail rate for electricity.  On the date Public Act 89-448 took effect, each of the plaintiffs had in hand signed contracts with ComEd to supply electricity at the retail rate.  Two of the three plants were up and running.  One was in the planning stage.  Each contract, appended to the complaints, contained the following clause:

"Service and billing, hereunder, *** shall continue for 20 years from the date Customer's Qualified Solid Waste to Energy Facility begins commercial operations, unless terminated by the written agreement of the parties, 
the Customer loses its status as a Qualified Solid Waste to Energy Facility *** or the company ceases to obtain full Public Utilities Revenue tax Credits *** associated with the purchase under this contract for any reason."
  (Emphasis added.)

Plaintiffs never refer to this contract clause in their briefs.  The day after the law was signed, ComEd stopped paying the retail rate.

Plaintiffs allege in their complaints that they built their plants in reliance on the old law.  Plaintiffs allege that, without the retail rate, their plants cannot meet daily operating expenses or service their loans.  

The Robbins plant was certified by the ISCC as a QSWEF on February 20, 1992.  The plant began to generate electricity in October 1996, about six months after Public Act 89-448 became law.  Full commercial operation began in 1997.    

CGE Ford Heights was certified by the ISCC as a QSWEF on June 2, 1992.  Ford Heights entered into a 20-year contract with ComEd and started up in December 1995.  Twelve days after the 1996 amendment became law, the Ford Heights plant closed and the owners filed for chapter 11 reorganization.  Ford Heights remained a debtor-in-possession during the bankruptcy proceedings.  Ford Heights is now reorganized and known as "New Heights."   

CGE Fulton entered into a 20-year contract with ComEd on January 26, 1995, effective when the plant began to generate electricity.  To date, the plant has not been built.  The complaint alleges that funding for construction of the plant "unraveled"  after the amendment became law.

CGE filed a six-count complaint on March 14, 1996.  Counts I and II allege breach of contract claims against ComEd.  Count III alleges that retroactive application of Public Act 89-448 to CGE's plants violates due process rights.  Count IV alleges that retroactive application of Public Act 89-448 impairs CGE's contracts with ComEd.  Count V alleges that retroactive application of Public Act 89-448 impairs CGE's rights under a contract with the state.  Count VI alleges that Public Act 89-448 was passed by the General Assembly in violation of the three-readings rule.  Ill. Const. 1970, art. IV, §8(d). 

The Partnership filed a similar action in federal court that was dismissed on eleventh amendment grounds.  The Partnership then filed a nine-count complaint in circuit court in November 1996.  

Count I asks the court to declare that Public Act 89-448 does not apply to electrical service contracts executed before it was enacted.  Count II alleges an impairment by the state of a contract between the Partnership and ComEd in violation of article I, section 10, of the United States Constitution and article I, section 16, of the Illinois Constitution.  U.S. Const., art. I, §10; Ill. Const. 1970, art. I, §16.  Count III alleges that the disparate treatment of incinerator plants under the present law is an equal protection violation under the fourteenth
 amendment of the United States Constitution, and article I, section 2, of the Illinois Constitution because the distinction is not rationally related to a legitimate government purpose.  U.S. Const., amend. XIV; Ill. Const. 1970, art. I, §2.  Count IV is similar to count II in that it alleges Public Act 89-448 "abrogates" the contract between the Partnership and ComEd in violation of the United States Constitution and the Illinois Constitution.  It also alleges that Public Act 89-448, in creating a subsidy for methane fuel incinerators and denying a subsidy to incinerators that burn tires, creates an unconstitutional classification unrelated to a governmental purpose, violating the fourteenth amendment of the United States Constitution, and article I, section 2, of the Illinois Constitution.  U.S. Const., amend. XIV; Ill. Const. 1970, art. I, §2.  Count V alleges that Public Act 89-448 amounts to an unconstitutional "taking" of private property in violation of the
 fifth and
 fourteenth amendments of the United States Constitution insofar as the plaintiff cannot generate a profit under an electrical service contract without the retail rate.  U.S. Const., amends. V, XIV.  Count VI alleges that Public Act 89-448 is special legislation prohibited by article IV, section 13, of the Illinois Constitution.  Ill. Const. 1970, art. IV, §13.  Count VII alleges a violation of the three readings rule.  Ill. Const. 1970, art. IV, §8.  Count VIII is directed to ComEd and alleges that ComEd’s refusal to pay the retail rate is in violation of the Public Utilities Act (220 ILCS 5/8-403.1 (West 1996)) and the Illinois Administrative Code.  Count IX alleges a section 1983 violation against both the state defendants and ComEd.  42 U.S.C.A. §1983 (West 1984).  The allegation against the state defendants in count IX is unclear,  but seems to allege that the state defendants "intend" to enforce Public Act 89-448, and that the enforcement will violate the Partnership’s federal constitutional rights and section 1983.  42 U.S.C.A. §1983 (West 1984).  Count IX also alleges that ComEd will comply with the new law, violating the Partnership’s rights under section 1983.  42 U.S.C.A. §1983 (West 1984).  Insofar as count IX alleges a section 1983 violation against ComEd, an enforceable contract with ComEd is presumed.  

 The state defendants, the Governor, and the named commissioners of the ISCC, alleged in their motion to dismiss that the State Lawsuit Immunity Act (745 ILCS 5/1 
(West 1996)) deprived the circuit court of jurisdiction over the claims and vested exclusive jurisdiction in the Court of Claims.  

The state defendants also moved to dismiss the section 1983 claim made by the Partnership, contending it is barred both by sovereign immunity and the eleventh amendment.  The trial court granted the motions after a hearing and dismissed all counts against the state for lack of subject matter jurisdiction based on sovereign immunity.  The dismissal order contained Supreme Court Rule 304(a) (134 Ill. 2d R. 304(a)) language.  

The state defendants filed separate section 2-619 motions to dismiss, directed at different counts of both complaints.  The state defendants also filed section 2-615 motions that were not ruled on.  735 ILCS 5/2-615, 2-619 (West 1996).  At least one of the dismissed counts, count IX of the Partnership complaint, was also against ComEd.  The trial court failed to designate which counts of the complaints were subject to dismissal.  The court also failed to address the claims against ComEd in count IX of the Partnership complaint.  An order entered January 31, 1997, required the plaintiffs to maintain separate dockets and judgments.  The trial court's dismissal order, granting defendants' separate motions on plaintiffs' individual complaints, made no reference to the January 31 order.  

We review dismissals under section 2-619 
de novo
.  
In re Chicago Flood Litigation
, 176 Ill. 2d 179, 188, 680 N.E.2d 265 (1997).  

The 1970 Illinois Constitution abolished sovereign immunity except as provided by the legislature.  
People ex rel. Manning v. Nickerson
, 184 Ill. 2d 245, 248, 702 N.E.2d 1278 (1998).  
The State Lawsuit Immunity Act (745 ILCS 5/1 (West 1996)) reinstated sovereign immunity, prohibiting lawsuits against the State of Illinois except as provided by the Court of Claims Act (705 ILCS 505/1 
et
 
seq
. (West 1996)).  
Manning
, 184 Ill. 2d at 248.  The Court of Claims Act vests exclusive jurisdiction in the Court of Claims over actions against the state based on contracts with the state, state laws and torts.  705 ILCS 505/8(a),(b),(d) (West 1996). 

Whether an action is, in fact, one against the state that may only be brought in the Court of Claims depends, not on the formal designation of the parties, but on the issues involved and the relief sought.  
Senn Park Nursing Center v. Miller
, 104 Ill. 2d 169, 186, 470 N.E.2d 1029 (1984).  There is no immunity when a complaint alleges that a state agent acted in violation of statutory or constitutional law or in excess of his authority.  
Senn Park
, 104 Ill. 2d at 188.  The Attorney General argued in this case, and the trial court agreed, that whatever face plaintiffs attempt to put on their complaints, they are, in the words of the trial court, “boiled down to basics[,] *** suits against the state.”  We must disagree.  The dismissal order made no attempt to distinguish the various theories underlying the several counts.  The allegations in the complaints before us are not so easily boiled down.   

All parties to this appeal agree on the general rule governing sovereign immunity analysis: whether a plaintiff has asserted claims that are, in fact, against the state turns on an analysis of the issues involved and the relief sought, rather than the formal designation of the parties.  
Senn Park
, 104 Ill. 2d at 186.  See also 
Sass v. Kramer
, 72 Ill. 2d 485, 490-91, 381 N.E. 975 (1978).  State immunity generally is not triggered by an action to stop a state official from unconstitutional or unauthorized conduct.  
Senn Park
, 104 Ill. 2d at 188.  

With that background, the Attorney General successfully argued before the trial court that the run-up language common to the specific counts in the Partnership complaint and counts V and VI of the CGE complaint allege a breach of contract by the State of Illinois.  The trial court agreed and relied on two cases in its ruling, 
Brucato v. Edgar
, 128 Ill. App. 3d 260, 470 N.E.2d 615 (1984), and 
Westshire Retirement & Healthcare Center v. Department of Public Aid
, 276 Ill. App. 3d 514, 658 N.E.2d 1286 (1995).  In 
Brucato
 the plaintiff alleged the Secretary of State had entered into a collective bargaining agreement that created classifications of state employees with different pay scales for Cook County and downstate employees.  Plaintiff alleged that the classifications and wage differentials were arbitrary and discriminatory and a denial of  her "constitutional right to due process and equal protection."  
Brucato
, 128 Ill. App. 3d at 262.  The complaint did not allege that the Secretary acted under color of an unconstitutional law.  The appellate court correctly analyzed the complaint as an attempt to block the discretionary authority of the Secretary to enter into a collective bargaining agreement.  Relying on 
Boards of Education of School Districts 67, 68, 69, 70, 71, 72, 73½, 74 & 219 v. Cronin
, 54 Ill. App. 3d 584, 370 N.E.2d 19 (1977), 
Local 3236 v. Illinois State Board of Education
, 121 Ill. App. 3d 160, 459 N.E.2d 300 (1984), and 
McGuire v. Board of Regents
, 71 Ill. App. 3d 991, 390 N.E.2d 632 (1979), the court pointed out that where the complaint seeks to control a state officer's discretionary authority (entering into a collective bargaining contract), and if a judgment for the plaintiff would control the action of the state or subject it to liability, the action will be deemed one against the state.  
Brucato
, 128 Ill. App. 3d at 264.    In 
Westshire
, plaintiffs sought to enjoin enforcement of certain amendments to the Illinois Administrative Code adopted to conform to the Public Aid Code (Code) (305 ILCS 5/5-1 
et
 
seq
. (West 1992)).  
Westshire
, 276 Ill. App. 3d at 518.  The Code itself was not challenged.  The court found, as in 
Brucato
, and citing 
Sass
, that the plaintiff sought to enjoin the Department of Public Aid from performing an act it was empowered to perform.  This, coupled with a claim for damages, as in 
Brucato
, made the lawsuit an action against the state.  
Westshire
, 276 Ill. App. 3d at 520-23.

A reading of the complaints before us leads us to conclude that 
Brucato
 and 
Westshire
 are not on point.  The constitutionality of a statute, as here, was not raised in either 
Brucato
 or 
Westshire
.  Nor are damages sought in the complaints before us.  
Senn Park
 makes clear that a sovereign immunity analysis depends upon the issues raised and the relief sought.  
Senn Park
, 104 Ill. 2d at 186.  The predicate upon which both complaints before us rests is that the state officials, whom the plaintiffs would have us enjoin, will act in reliance on an unconstitutional statute enacted by the General Assembly.  Our courts have consistently held that where an actual controversy exists, a declaratory judgment action is an appropriate way to adjudicate the validity of a statute.  
Blase v. State of Illinois
, 55 Ill. 2d 94, 302 N.E.2d 46 (1973);  
Follett's Illinois Book & Supply Store, Inc. v. Isaacs
, 27 Ill. 2d 600, 190 N.E.2d 324 (1963).  See also 
Northwestern v. State of Illinois
, 56 Ill. App. 3d 305, 371 N.E.2d 1046 (1977); 
Commonwealth Edison v. Community Unit School District 200, DuPage County
, 44 Ill. App. 3d 665, 358 N.E.2d 688 (1976); 
Hoagland v. Bibb
, 12 Ill. App. 2d 298, 139 N.E.2d 417 (1957).      

That one plaintiff has analogized the behavior of the state in this case to a “breach of contract” and the other has actually pled it does not alter an “issues raised” analysis under 
Senn Park
.  The counts of the complaint must be read to determine if facts have been pled that state a cause of action.

   The Partnership complaint, in the prefatory allegations common to all counts, alleges a breach of contract by the state.  But none of the numbered counts alleges a breach of contract by the state or pleads facts that would support the allegations.  Conclusions of law or fact unsupported by specific factual allegations are disregarded on a motion to dismiss.  
Doe v. Calumet City
, 161 Ill. 2d 374, 385, 641 N.E.2d 498 (1994).  

Count V of the CGE complaint is captioned "breach of contract" by the state, but when the count is read, we learn that the General Assembly amended a law that allegedly impairs an existing contract with ComEd and so will prevent state officials from enforcing an earlier law in effect when the contract was signed.  The count of the CGE complaint alleging breach of contract by the State of Illinois does not state a cause of action for breach of contract.  To state a cause of action for breach of contract a plaintiff must allege a valid contract, plaintiff's performance, defendant's breach and damages.  
Elson v. State Farm Fire & Casualty Co
., 295 Ill. App. 3d 1, 6, 691 N.E.2d 807 (1998).  Count V of the CGE complaint reads in part:

"111.  The ICC defendants' application of the new definition of QSWEF contained in House Bill 1523 to the Ford Heights and Fulton Facilities so as to remove the QSWEF certification of these facilities will destroy plaintiffs' respective contractual rights and obligations under their contracts with the State of Illinois.

112.  Removal of the QSWEF certifications of the Ford Heights and Fulton Facilities will deprive plaintiffs of the retail rate for electricity produced by the Ford Heights and Fulton Facilities.  The very basis, inducement, and consideration to plaintiffs of their contracts with the State of Illinois would thereby be eliminated.  

113.  Application of the new definition of QSWEF contained in House Bill 1523 to plaintiffs' waste-tire-

to-energy facilities would violates the Contract Clause of the Illinois Constitution, Ill. Const. Art. 1, §16, and the Contract Clause of the United States Constitution, U.S. Const. Art. 1, §10, cl. 1."

A complaint that does not state a cause of action should be dismissed for that reason.  
Illinois Graphics Co. v. Nickum
, 159 Ill. 2d 469, 487, 639 N.E.2d 1202 (1994).  There is no need to reach the issue of sovereign immunity.  The complaints do not state a cause of action against the state for breach of contract.

The cases relied on by defendants, other than 
Brucato
 and 
Westshire
, are distinguishable because each was based on an actual contract with the state.  
G.H. Sternberg & Co. v. Bond
, 30 Ill. App. 3d 874, 875, 333 N.E.2d 261 (1975) (action to enjoin state from exercising contract rights under its construction contract with plaintiff was "action against the state"); 
Local 3236 v. Illinois State Board of Education
, 121 Ill. App. 3d 160, 459 N.E.2d 300 (1984) (action to enforce the terms of contract between plaintiffs and state agency is an "action against the state"); 
Smith v. Jones
, 113 Ill. 2d 126, 497 N.E.2d 738 (1986) (action to enjoin Director of the Illinois State Lottery from distributing funds was an "action against the state" where  plaintiff alleged that Director breached contract with plaintiff); 
President Lincoln Hotel Venture v. Bank One, Springfield
, 271 Ill. App. 3d 1048, 649 N.E.2d 432 (1994) (action to enforce loan restructuring agreement under Illinois Insured Mortgage Pilot Program was "action against the state" where contract was entered into with the Treasurer, who had contractual authority to declare a default). 

In its dispositive order, the trial court concluded that sovereign immunity barred the actions and the proper forum for the complaints was the Court of Claims.  Without contract counts or a plea for damages, only the injunctive and declaratory counts remain.  It is difficult to see what the Court of Claims would do with such a complaint.  While the Court of Claims does have injunctive powers (see 
Management Association of Illinois, Inc. v. Board of Regents
, 248 Ill. App. 3d 599, 618 N.E.2d 694 (1993)), the balance of this opinion reaches the conclusion that the injunctive counts directed at the state are based on conclusory allegations of possible state action based on the enactment of an allegedly unconstitutional statute.  Since the Court of Claims has no power to construe the constitutionality of a statute, its injunctive powers lack a predicate in this case.  See 
Rosetti Contracting Co. v. Court of Claims
, 109 Ill. 2d 72, 485 N.E.2d 332 (1985) (Court of Claims is not a court within the meaning of the judicial article and the supreme court is the final arbiter of the constitution).     Absent counts that plead a contract with the state, we must conclude that the counts in both complaints seeking to enjoin state action and a declaration that Public Act 89-448 is unconstitutional were improperly dismissed on a sovereign immunity analysis.

But that is not the end of the matter.  We believe it is necessary to examine the counts individually, sovereign immunity aside, to determine if they state a cause of action for injunctive or declaratory relief.  On a motion to dismiss we may affirm the trial court on any basis found in the record.  
Material Service Corp. v. Department of Revenue
, 98 Ill. 2d 382, 387, 457 N.E.2d 9 (1983).    

From the allegations of both complaints we learn the following facts, which we accept as true for purposes of deciding a motion to dismiss.

Plaintiffs were issued permits by the Illinois Commerce Commission to operate their incinerator plants as QSWEFs entitled to the retail rate.  The complaints do not allege that these permits have ever been revoked.   Plaintiffs affirmed this at oral argument.  Nor is there an allegation that the state told plaintiffs their permits will be revoked.  Plaintiffs entered into 20-year contracts with Commonwealth Edison that entitled them to receive the retail rate for electricity generated and sold to ComEd.  The statute directing that plants such as those operated by plaintiffs receive the retail rate for electricity generated, and that the utility paying the rate was entitled to a state tax credit, was amended on March 14, 1996, to delete these provisions.  ComEd notified plaintiffs on March 14 that it would no longer pay the retail rate to plaintiffs.  CGE immediately closed its Ford Heights plant and filed for chapter 11 bankruptcy protection.  CGE then  stopped preparations to open the Fulton plant.  

Notably absent from the complaints are allegations that: (1) permits granting plaintiffs their QSWEF status have been revoked; (2) the state or its named officers are enforcing the amendatory act of 1996 against the plaintiffs or ComEd; (3) a state official told plaintiffs or ComEd that the state intends to enforce the amendatory act against them (in the case of CGE Ford Heights, now  "New Heights," in bankruptcy, and CGE Fulton, which does not exist, it is difficult to see how the state could enforce the amendatory act against them); (4) ComEd has been denied tax credits allowed under the pre-amended law; and (5) any state official told plaintiffs that the amendatory act of 1996 applies retroactively to impact upon the ComEd contracts.  

What we have before us is a complaint that seeks an advisory opinion from the court on the impact the 1996 amendatory act will have on the contracts between plaintiffs and ComEd before state action has been announced or taken.  

A court should not decide a case where the judgment would have an advisory effect.  
Berlin v. Sarah Bush Lincoln Health Center
, 179 Ill. 2d 1, 8, 688 N.E.2d 106 (1996).  Resolving a question of law that is not presented by the facts of the case results in an advisory opinion.  
People ex rel. Partee v. Murphy
, 133 Ill. 2d 402, 408, 550 N.E.2d 998 (1990).  We will not render advisory opinions or decide cases merely to establish precedent.  
Berlin
, 179 Ill. 2d at 8.  

Plaintiffs' complaints, as to the counts seeking to enjoin future state action, ask us to give an advisory opinion about possible future events: the impact of Public Act 89-448 on plaintiffs' contracts with ComEd should the state decide to enforce the amended law against them.  

What is clear is that ComEd and plaintiffs took the only actions alleged in the complaint.  The only harm suffered by plaintiffs so far is a direct consequence of ComEd’s unilateral decision to stop paying the retail rate, presumably in reliance on the escape clauses in its contracts, although to be fair, this presumption was never pled.  We believe that the injunctive counts of both complaints directed at the state are premature.  See 
National Marine, Inc. v. Illinois Environmental Protection Agency
, 159 Ill. 2d 381, 390, 639 N.E.2d 571 (1994).  This finding applies to counts I, II, IV and IX of the Partnership complaint.  It also applies to counts III, IV and V of CGE’s complaint.  

Plaintiffs maintain in a supplement to their briefs and at oral argument, where the issue of prematurity was first raised, that they have pled an actual controversy with the State of Illinois.  They cite the recent supreme court decision in 
First America Bank, Rockford, N.A. v. Netsch
, 166 Ill. 2d 165, 651 N.E.2d 1105 (1995), in support.  

In that case, the bank filed a declaratory judgment action to resolve conflicting interpretations of the scope of the comptroller’s authority under three statutes.  
Netsch
, 166 Ill. 2d at 168.  The bank alleged that the Comptroller interpreted the statutes and adopted policies that would have a negative impact on certain mortgages held by the bank.  Our supreme court noted that, "[a]ccording to the allegations in the complaint, the Comptroller’s office had made statements to the Bank indicating that the Bank *** would be liable for trust fund shortages and that no license would issue to a purchaser who did not replenish the funds."  
Netsch
, 166 Ill. 2d at 170.  The supreme court found that the bank’s complaint “sets forth an actual controversy which stems from the parties' conflicting interpretations of the scope of the Comptroller’s authority."  
Netsch
, 166 Ill. 2d at 174.  We note in passing that the jurisdiction of the court to entertain a suit challenging the scope of a state officer's authority under a statute went unquestioned.   

The complaint before us does not allege that a state official announced a policy or took action to implement Public Act 89-448 adverse to plaintiff.  Plaintiffs at oral argument drew our attention to the Governor’s message when he signed the bill.  The Governor noted that the bill would work a hardship on owners such as plaintiffs.  We decline to read a Governor's signatory message, in the absence of authority, as a prediction of what the state might do.  

While no one disputes the Governor’s opinion about the intended impact of the bill, absent is any reference to the issue framed by plaintiffs’ complaints: the impact the new law would have on contracts executed in reliance on the old law.  What is clear from the allegations of the complaints is that the state officials charged with enforcing the new law have said and done nothing to suggest that it would be enforced against plaintiffs.  Absent these allegations, this case does not fit the facts that support the 
Netsch
 holding.  There, comptroller officials told the bank what they thought the law meant and how they intended to enforce it.  

The actual controversy requirement, however, does not mean that a wrong must have been committed and injury inflicted.  Instead, a plaintiff must show that the underlying facts and issues of the case are not moot, hypothetical or premature, so as to require the court to give legal advice about future events.  
Messenger v. Edgar
, 157 Ill. 2d 162, 170, 623 N.E.2d 310 (1993).  The dismissal on sovereign immunity grounds foreclosed plaintiffs' opportunity to argue this issue in the trial court or amend their complaints to plead an actual controversy.  While we believe plaintiffs have not pled an actual controversy in their injunctive counts and dismiss them for that reason, the issue was raised by the court for the first time on appeal.  In keeping with 
Geaslen v. Berkson, Gorov & Levin, Ltd
., 155 Ill. 2d 223, 613 N.E.2d 702 (1993), the dismissal is without prejudice with leave to replead on remand.

What happened in this case as we read the complaints in their present form had nothing to do with state action.  Private parties triggered this litigation by anticipating what the state might do.  Plaintiffs filed their complaints in response to actions taken by ComEd, a private utility, which interpreted the amendatory act to relieve it of obligations under contracts with the plaintiffs.  Whether ComEd read these contracts correctly remains an issue in the counts pending before the trial court.  A decision by us on these facts would be nothing more than legal advice about possible future events.   

An examination of the contracts between ComEd and plaintiffs lends support to our position that the complaints against the state are premature.  The trial court may find, when it addresses the escape clauses in the contracts, that as a matter of law ComEd was relieved of its obligations under the contracts when the amendatory act took effect.  On the other hand, a question of fact may be found with respect to the escape clauses.  Whatever happens, to frame an actual controversy with the State of Illinois, plaintiffs may be required to have in hand an enforceable 20-year contract with ComEd.  We will not speculate about the viability of the ComEd contracts, other than to note that a court may conclude  that plaintiffs entered the contracts fully aware that they were contingent upon the continuation of then existing law, and plaintiffs entered the contract at their peril.      

One issue remains:  we must distinguish those counts in which the plaintiffs seek to enjoin future state action under color of an allegedly unconstitutional law and those counts that ask the court to declare the act unconstitutional.  We believe the former are premature.  The latter are not, if plaintiffs have standing.  

A declaratory judgment action will lie to determine rights under a statute even though the act is not yet in effect.  
Hoaglund
, 12 Ill. App. 2d at 303.  It is presumed that a validly enacted statute will be enforced.  
Kerr-McGee Chemical Corp. v. Department of Nuclear Safety
, 204 Ill. App. 3d 605, 561 N.E.2d 1370 (1990).    

The counts of both complaints addressing the constitutionality of Public Act 89-448 do not ask the court to render an advisory opinion based on what plaintiffs think the state might do.  The court is asked instead to determine whether alleged infirmities in the statute itself (and the way it was passed) make it unconstitutional.  Plaintiffs alleged that they are members of the class to which the statute applies.  These counts, and plaintiffs' standing to raise them, were not addressed by the trial court and are remanded for that purpose.  The facts pled in support of standing are taken as true for purposes of section 2-615 and section 2-619 motions.

To sum up:  counts I and II of the CGE complaint for breach of contract against ComEd are not before us and remain pending.  The dismissals of count III, seeking to enjoin retroactive application of Public Act 89-448 by the state, and count IV, alleging impairment of the ComEd contract by future state action, are affirmed, not on sovereign immunity grounds, but because they are premature.  They are dismissed without prejudice, with leave to replead.  The dismissal of count V, alleging impairment of a contract with the state, is affirmed, not on sovereign immunity grounds, but for failure to state a cause of action.  Count VI, alleging a violation of the three-reading rule, was only addressed in a separate section 2-615 motion not ruled on by the trial court.  This count, as we read the dismissal order, is not before us on appeal but remains pending in the trial court as part of the unaddressed section 2-615 motion.    

As to the Partnership complaint, the dismissal of count I, alleging retroactive application of Public Act 89-448 by future state action, is  affirmed, not on sovereign immunity grounds, but because it is premature.  The dismissal is without prejudice, with leave to replead.  The dismissal of count II, alleging impairment of a contract with the state, is affirmed, not on sovereign immunity grounds, but for failure to state a cause of action.  The dismissal of count III, alleging an arbitrary and irrational distinction between plants subject to the act, is vacated.  The count is remanded with directions that the trial court address it.  The dismissal of count IV, alleging a due process violation to the extent that the amendment amounts to an abrogation of the plaintiffs' contracts (whatever the undefined "abrogation" might mean), is affirmed, not based on sovereign immunity, but for failure to state a cause of action.  While we affirm the dismissal of counts II and IV, but on grounds other than sovereign immunity, plaintiffs should be given the opportunity to replead them.  Count V, alleging an unconstitutional "taking," attacks the statute itself based on the fifth and fourteenth amendments.  The dismissal is vacated and the count is remanded with directions that the trial court address it.  The dismissal of count VI, alleging that Public Act 89-448 is special legislation, and count VII, alleging a three-

reading-rule violation, are vacated.  The counts are remanded with directions that the trial court address them.  Count VIII is not before us.  As to the state defendants' dismissal under count IX, we affirm, not on grounds of sovereign immunity, but because the count is premature, no action by the state amounting to a section 1983 violation having been pled.  42 U.S.C.A. §1983 (West 1994).  The dismissal is without prejudice, with leave to replead.  Insofar as the order of the trial court can be read to dismiss the section 1983 claim against ComEd, the order is vacated and remanded with directions to address it.   

Affirmed in part and vacated in part; cause remanded with directions.

     GORDON and McBRIDE, JJ., concur.